RICHARD GUNZER ET AL. *v.* TOWN OF NEW FAIRFIELD ET AL.

SUPERIOR COURT     FAIRFIELD COUNTY     FILE No. 94580
AT DANBURY

Memorandum filed January 3, 1955.

*Wilson, Hanna & Wanderer,* of Danbury, for the plaintiffs.

*Burton F. Sherwood,* of Danbury, for the defendants.

COMLEY, J. This is an action by numerous owners of real estate in the town of New Fairfield to determine by declaratory judgment the validity of rulings made by the moderator of a town meeting which excluded them from the right to vote. The meeting was held on September 3, 1954, and was held for the purpose of considering the establishment of a town park.

All the allegations of the complaint are admitted and the plaintiffs have moved for judgment on the pleadings. It is obvious that the rulings made at the meeting in September are now academic and that no declaratory judgment can affect those rulings. There is, however, an allegation that those rulings have created uncertainty as to the plaintiffs' rights at future meetings. This would seem to present a proper case for a declaratory judgment. No other remedy would seem to be available to these plaintiffs. See *Connecticut Savings Bank* v. *First National Bank,* 133 Conn. 403; *Norwalk Teachers' Assn.* v. *Board of Education,* 138 Conn. 269.

Most of the plaintiffs are not electors of the town of New Fairfield but they do own real estate in the town and they claim the right to vote at certain town meetings under the provisions of § 161c of the 1953 Cumulative Supplement to the General Statutes, which provides as follows: "ELIGIBILITY TO VOTE. At any town meeting other than a regular or special town election or at any meeting of any fire, sewer or school district or any other municipal subdivision of any town incorporated by any special act, any person who is an elector of such town may vote and any citizen of the age of twenty-one years or more who has real estate standing in his name and located therein or an equity in such real estate, which real estate or equity is of the value of at least one thou-

sand dollars and which real estate or equity in such real estate is in the last-completed grand list of such town, district or subdivision in the name of such person at not less than said amount, or who has any personal estate in such town, district or subdivision which is in said list in the name of such person at not less than five hundred dollars, may vote, unless restricted by the provisions of any special act relating to such town, district or subdivision."

When the plaintiffs presented themselves to vote at the meeting of September 3, 1954, the moderator orally questioned them as to mortgages upon their real estate and excluded them from voting upon the basis of a ruling made by him which is thus alleged in the complaint: "If the assessed value of the real estate standing solely in the name of the intended voters in the last grand list did not exceed one thousand dollars after deducting the amount of any mortgage of record against said property at the time of the offer to vote, such person is ineligible to vote, even though the mortgage does not appear on the assessment list and his taxes are actually based on an assessment in excess of one thousand dollars."

The statute (§ 161c) has an ancient history. In the Revision of 1796 at page 415, it was provided that no person "that hath not a freehold estate rated in the common list at nine dollars . . . . shall be allowed to vote." No provision was therein made for the deduction of mortgage debts. This was repeated in the Revision of 1808 at page 650. An important change appears in the Revision of 1821 (p. 457), which prescribed that "all the male white inhabitants of the several towns in the state, of the age of twenty-one years, who have a freehold estate *not subject to a mortgage,* rated in the common list or assessment at nine dollars . . . . shall have the right and privilege to vote and act in town-meetings" (italics supplied). Thus the existence of any mortgage upon the real

estate of a nonelector of the town, regardless of its amount or of its relationship to the value of the real estate, was sufficient to preclude the owner from voting. This was substantially repeated in the Revisions of 1835 at page 543, 1838 at page 621, 1849 at page 138, 1854 at page 158, 1866 in chapter 2, § 17, 1875 in title 7, chapter 1. By the Public Acts of 1877, chapter 146, § 29, the requisite value of the freehold estate was raised to $300, but the provision that it be "not subject to a mortgage" was retained. This was substantially carried on in the Revisions of 1888 (c. 7, § 36), 1902 (c. 112, § 1798), and 1918 (c. 15, § 255).

By chapter 229 of the Public Acts of 1925 an important change was made. In that statute the words "not subject to a mortgage" were dropped and it was provided, substantially as it is today, that the non-elector, in order to qualify, must have "real estate standing in his name . . . . or an equity in such real estate, which real estate or equity shall be of the value of at least three hundred dollars." This was carried on in the Revision of 1930 (c. 15, § 270). By Public Acts of 1943, § 80g, the required value of the real estate was raised from $300 to $1000. This represents the last change made in the statute in so far as it affects the present question.

It thus appears that until 1821 the existence of a mortgage upon the real estate of the voter was immaterial. Then from 1821 until 1925 the existence of any mortgage upon his real estate disqualified him. Since 1925 the requirement is that he shall have "real estate standing in his name and located therein or an equity in such real estate, which real estate or equity shall be of the value of at least . . . dollars and which real estate or equity in such real estate is in the last completed grand list . . . . in the name of such person at not less than said amount." Three

times in the statute a distinction is drawn between real estate and an equity in real estate. Three times the two phrases are separated by the disjunctive word "or." Webster's New International Dictionary (2d Ed.) defines "or" as a "co-ordinating particle that marks an alternative." It can only be construed as used in the sense of "and" when the legislative intent to do so is clear and unmistakable. *Bordonaro* v. *Senk,* 109 Conn. 428. There is no such indication in the present case. If the General Assembly had intended to require that the prospective voter have not only legal title to the real estate but that his so-called equity therein above incumbrances should equal $1000, that intent could have been easily expressed in clear and unequivocal language. The language chosen indicates the opposite.

Practical considerations fortify this construction. It is a matter of common knowledge that assessed values, especially in our smaller towns, are far below true and actual or market values. On the other hand, mortgage loans are made on the basis of market values and, especially in recent years, are made in amounts which represent a high percentage of such values. Thus a person owning property of real, substantial value might appear to have no equity at all if his mortgage is deducted from assessed value. Furthermore, the ascertainment of the real value of an owner's interest in real estate is obviously impossible in the heat and hurry of a town meeting. It can only be done by some arbitrary system which affords the owner no opportunity to demonstrate the true facts.

It is the conclusion of the court that the ruling made by the moderator at the meeting of September 3, 1954, was erroneous and that at future meetings the plaintiffs, who were excluded from voting by that ruling, should be entitled to vote.

Certain of the plaintiffs also complain of another ruling made by the moderator at the same meeting. That ruling is alleged in the complaint to have been as follows: "In case of jointly owned property with the right of survivorship, if the assessed value of the said real estate standing in the name of the intended voter and his spouse in the last completed grand list did not exceed two thousand dollars after deducting the amount of the mortgage of record against said property at the time of the offer to vote such person is ineligible to vote even though the mortgage does not appear on the assessment list and if there were no mortgages such intended voter was declared ineligible even though the assessed valuation exceeded one thousand dollars."

In so far as this ruling involves the deduction of mortgage indebtedness from assessed values it has been sufficiently covered by the foregoing discussion of the first ruling. The balance of the ruling is based upon the proposition that if a husband and wife are listed as the joint owners of a piece of real estate each is entitled to vote provided the assessed value is not less than two thousand dollars. At first glance this proposition may appear to involve a forced construction of the statute and yet it is the only one of three alternative constructions which will approximate the clear legislative intent. One alternative is to hold that joint owners may not vote at all since the statute makes no express provision for property so listed. This woud violate that intent, especially where joint owners hold real estate of high value and thereby have a decided interest in the affairs of the town. Another alternative would be to hold that all joint owners, no matter how many, of property listed at $1000 or more acquire the right to vote. This would contravene the purpose of the statute since it would confer the power to vote on persons who have less, and possibly much less, than a

taxable interest of $1000. The moderator's ruling on this question is, therefore, sustained.

A declaratory judgment is rendered (A) that the plaintiffs who had real estate standing in the respective individual names in the town of New Fairfield of the value of at least $1000 in the last completed grand list of said town were eligible to vote at the town meeting of September 3, 1954, and will be eligible to vote at future town meetings except at regular or special town elections unless and until their status with respect to the ownership of property shall have changed; (B) that in determining the value of any property owned by a prospective voter the existence or amount of any mortgage thereon does not affect his qualifications; (C) that the plaintiffs who, together with their respective spouses, held real estate standing in their names as joint owners of the value of at least $2000 were eligible to vote at said meeting and will be eligible to vote at future meetings of a similar nature.