JOHN C. SMITH, Individually, and Trading as United
Carpet Brokers v. THE HEARST CORPORATION,
THE NEWS-AMERICAN DIVISION

[No. 654, September Term, 1980.]

*Decided March 5, 1981.*

The cause was argued before MOYLAN, MELVIN and
MacDANIEL, JJ.

*Alan R. Engel,* with whom were *Robert Allen Sapero* and
*Sapero & Sapero* on the brief, for appellant.

*Edward S. Harris,* with whom were *Sagner, Steven &
Harris* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

Judicial notice of a fact is an acceptable substitute for formal proof of such fact, when formal proof is clearly unnecessary to enhance the accuracy of the fact-finding process. Dean McCormick set out the general principles in his *Law of Evidence* (First Edition, 1954), Section 323, "The Need for and the Effect of Judicial Notice," pp. 687-688:

"The principal effect of the use of the doctrine of judicial notice is to excuse the party having the burden of establishing a fact from the necessity of producing formal proof of the fact by sworn witnesses and authenticated documents or objective evidence. . . .

The requirement of formal proof by witnesses and documents under the restrictions of the preferential and exclusionary rules has thus far been assumed to be justified generally for the ascertainment of facts at judicial trials. But in some situations this cumbrous process of formal proof is plainly not needed at all. In other situations compliance with the process might conceivably give some enhanced accuracy, but the added assurance would be marginal and clearly not worth what it would cost.

What are these situations? First, where the fact in question in known at once with certainty by all the reasonably intelligent people in the community without the need of resorting to any evidential data at all."

Although there are a number of categories of things of which judicial notice may be taken,[1] the category that concerns us here is that of facts which are a matter of common knowledge. Again, Dean McCormick is instructive at Section 324, "Matters of Common Knowledge," pp. 689-690:

---

1. The list of categories includes, 1) facts capable of certain verification; 2) judicial notice of domestic and foreign law; 3) facts relating to the personnel, operation and records of the court; 4) other governmental facts; and 5) legislative facts. See generally, McCormick, *op. cit.*, pp.691-707.

"The oldest and plainest ground for judicial notice is that the fact is so commonly known in the community as to make it unprofitable to require proof, and so certainly known as to make it indisputable among reasonable men. Though this basis for notice is sometimes loosely described as universal knowledge, manifestly this could not be taken literally and the modern opinions, more reasonably, speak in terms of the knowledge of 'most men,' or of 'what well-informed persons generally know,' or 'the knowledge of that every intelligent person has.' These phrases progressively widen the circle of facts within 'common knowledge.' Moveover, though usually facts of 'common knowledge' will be generally known throughout the country, *it is sufficient as a basis for judicial notice that they be known in the local community where the trial court sits.*" (Emphasis supplied).

Bringing this body of evidentiary law to bear upon the single, narrow issue before us, the trial court in question was Judge John E. Raine, Jr., sitting without a jury in the Circuit Court for Baltimore County. The local community in question was the Baltimore metropolitan area. The fact of common knowledge of which Judge Raine took judicial notice is that *The Baltimore News-American* is a Hearst newspaper.

Beyond this single fact, the merits are not in dispute. The appellant, John C. Smith, individually and trading as United Carpet Brokers (Smith), was the defendant below in a simple suit on a contract. The plaintiff below is the appellee, the Hearst Corporation, *The News-American* Division (Hearst). On April 4, 1976, Smith entered into a written advertising agreement with Hearst for 13 weeks of advertising copy, supplemented by a verbal agreement between the parties for two additional months of advertising. Hearst ultimately sued Smith for an unpaid balance due on the contract of $6,851.80. Hearst presented its case before Judge Raine in a court trial. After the denial of his motion

for a directed verdict at the end of the plaintiff's case, Smith presented no defense. Judge Raine entered a judgment in favor of Hearst for the amount claimed. The appellant's only contention is that Judge Raine erroneously denied his motion for a directed verdict because of the failure of the plaintiff to establish a connection between *The Baltimore News-American* and the Hearst Corporation.

To be sure, the contracts which were introduced in evidence bore the name of *The News-American* and made no reference to the Hearst Corporation. The two witnesses who were called by Hearst testified preliminarily as to the official positions they held with *The Baltimore News-American* and made no direct reference to the Hearst Corporation. The initial declaration and all subsequent pleadings, however, were brought in the name of "The Hearst Corporation, a body corporate, *The News-American* Division." In making his argument for a directed verdict, the appellant did not question the fact that he owed money on the contracts but argued that no proof had been adduced to establish that the plaintiff Hearst Corporation was a party to the contracts. Judge Raine responded to the motion:

> "I can take judicial notice, I believe, of what everybody generally knows, to wit: that the News American is a division of the Hearst Corporation."

A few minutes later, in rendering his formal judgment, Judge Raine reiterated:

> "Judgment is entered for the Plaintiff for $6,851.80, the amount claimed. It is true, Mr. Sapero, that the testimony referred to the News American, but the suit is brought by the News American, Division of the Hearst Corporation, a body corporate, and I think that it is an insubstantial objection to the fact that there wasn't any reference to the Hearst Corporation.
>
> I think I can take judicial notice of what everybody in this general area knows, and that is that the News American is a division of the Hearst Corporation."

In *IX Wigmore on Evidence* (Third Edition, 1940), Section 2580, "Notorious Miscellaneous Facts: (1) Commerce, Industry, History, Natural Science, etc.," pp. 571-572, Dean Wigmore explains the guidelines that should animate our consideration of judicial notice of this variety:

"Applying the general principle, especially in regard to the element of notoriousness, Courts are found noticing, from time to time, a varied array of unquestionable facts, ranging throughout the data of commerce, industry, history, and natural science. It is unprofitable, as well as impracticable, to seek to connect these rulings by generalities and distinctions; for the notoriousness of a truth varies much with differences of period and of place. It is even erroneous, in many if not in most instances, to regard them as precedents. It is the spirit and example of the rulings, rather than their precise tenor, that is to be useful in guidance."

In Section 2583, "Future of the Doctrine of Judicial Notice," Dean Wigmore points out hopefully that the doctrine "contains the kernel of great possibilities, as yet not used, for improving trial procedure" and laments "the judicial unreadiness to use boldly this principle." To illustrate the general truth involved, he refers to the well-publicized 1908-1909 exchange of correspondence that swirled about the case of *People v. Schmitz,* 94 P. 419 (Cal.), including his own letter to the San Francisco *Liberator* of January 30, 1909, cited at p. 584:

"Their [rules of judicial notice] essential and sole purpose is to relieve the party from proof, — that is, from proof of facts which are so notorious as not to need proof. When a party has not averred or evidenced a fact which later turns out, in the Supreme Court's opinion, to be vital, the rule of judicial notice helps out the judge by permitting him to take the fact as true, where it is one so notorious that evidence of it would have been superfluous. Now these helping rules are not intended to bind him,

but the contrary, *i.e.,* to make him free to take the fact as proved where he knows the proof was not needed. Moreover, it follows, since these rules cannot foresee every case new times and new conditions will create, that they can always receive new applications. The precedents of former judges, in noticing specific facts, do not restrict present judges from noticing new facts, provided only that the new fact is notorious to all the community. For example, the unquestioned election of William H. Taft as President of the United States is notorious; but no man named William H. Taft has ever before been elected President, and no judicial precedent has noticed the fact. Yet no Court would hesitate to notice this new notorious fact. . . .

If, then, a man named Schmitz was notoriously Mayor of San Francisco, and a man named Ruef was notoriously its political boss, at the time in question, that is all that any Court needs; and the doctrine of judicial notice gives it all the liberty it needs."

The limited thrust of Maryland appellate discussion of this principle points in the same direction. *Macht v. Hecht Co.,* 191 Md. 98, 102, 59 A.2d 754, 756 (1948); *Hettleman v. Frank,* 136 Md. 351, 110 A. 715 (1920). In the related context of noticing geographically street names in Baltimore City, the Court of Appeals said in *Dean v. State,* 205 Md. 274, 281, 107 A.2d 88 (1954):

"We think that there is no reason why a judge sitting in Baltimore City should have to close his mind to the fact which is well known in that community, that there are streets in the City known, respectively, as Monument Street, Bond Street, 20th Street, 21st Street and Eden Street."

By the same token, we think "that there is no reason why" Judge Raine "should have to close his mind to the fact which is well known in [his] community," that *The Baltimore News-American* is a Hearst paper. The appellant was fully apprised that Judge Raine took such judicial notice. If the

appellant believed that the facts so noticed were not true, he was entitled to offer argument or authority to the contrary. It is clear even now that the appellant does not dispute the truth of the thing noticed but challenges only the process of noticing.

Appellate review of judicial notice of a fact from the store of common knowledge is governed by the clearly erroneous standard of Maryland Rule 1086. We are by no means suggesting that Judge Raine would have been clearly wrong if he had declined to take notice of the fact now in issue. We are simply holding that he was not clearly wrong when he did so notice. The principle that there is a legitimate range within which notice may be taken or declined and that there is efficacy in taking it, when appropriate, was early pointed out by Professor James Bradley Thayer in his *Preliminary Treatise on Evidence* (1898), at p. 300:

> "Courts may judicially notice much that they cannot be required to notice. That is well worth emphasizing; for it points to a great possible usefulness in this doctrine, in helping to shorten and simplify trials. . . . The failure to exercise it tends daily to smother trials with technicality and monstrously lengthens them out."

In affirming Judge Raine, we harken to the echo of Lord Sumner in *Commonwealth Shipping Representative v. Peninsular & Or. Branch Service,* App. Cas. 191, 211 (1923):

> "To require that a judge should affect a cloistered aloofness from facts that every other man in Court is fully aware of, and should insist on having proof on oath of what as a man of the world he knows already better than any witness can tell him, is a rule that may easily become pedantic and futile."

To hold otherwise would be to deny that Orson Welles was "Citizen Kane."

*Judgment affirmed; costs to be paid*
*by appellant.*