318

BERISH, APPELLANT, *v.* BERISH, APPELLEE.

[Cite as Berish v. Berish (1982), 69 Ohio St. 2d 318.]

(No. 81-800—Decided February 19, 1982.)

*Messrs. Guarnieri & Secrest* and *Mr. Michael D. Rossi,* for appellant.

*Mr. David E. Boker,* for appellee.

WILLIAM B. BROWN, J.   The sole issue presented in this case is whether a trial court, in determining divorce litigants' *inter se* property rights in a joint savings account accumulated during marriage, abused its discretion when it based its award upon the account balance in existence at the time of the parties' permanent separation rather than upon the balance in existence at the time of the final decree.

This court has long recognized that trial courts are vested with broad powers in determining the appropriate scope of property awards in divorce actions. As was stated in the recent case of *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 355, " * * * [b]oth R. C. 3105.18, which provides that the trial court may divide property as it deems equitable, and past case law require that the trial court have broad discretion in arriving at an equitable property division." This court further noted in *Cherry* that " * * * [a] reviewing court may modify or reverse a property division, [only] if it finds that the trial court abused its discretion in dividing the property as it did. Section 3(B), Article IV of the Ohio Constitution; App. R. 12." *Id.*

Applying these standards to the facts of the case at bar, this court cannot find that the trial court abused its discretion in making the award in question. The trial court identified a specific tangible marital asset (the joint savings account) existing at the time when the parties were permanently separated and awaiting the formal termination of their marriage; discovered appellee's post-separation conversion of same to his own use; equitably returned to appellant her nonmarital portion of the asset; divided the balance equally between the parties; set off one-half of the value of appellant's employee stock savings plan accumulated before the parties' separation; and then ordered appellee to pay appellant her equitable share.

The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations. The public policy giving rise to equitable distribution is at least in part an

acknowledgment that marriage is a shared enterprise or joint undertaking. While marriage is literally a partnership, it is a partnership in which the contributions and equities of the partners do differ from individual case to individual case. Assets acquired by the joint efforts of the parties should be, on termination, eligible for distribution. But the precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. It is the equitableness of the result reached that must stand the test of fairness on review.

In holding that the trial court did not abuse its discretion in making an award based on assets in existence at the time of permanent separation rather than at the time of the final decree, this court is reaffirming the premise stated in *Cherry, supra,* at page 355:

" * * * Each divorce case is different, and the trial court must be free to consider all the relevant factors. * * *

" * * * *Marriage is a union of equals. Neither party should make a profit at the expense of the other. * * * This is why it is ill-advised and impossible for any court to set down a flat rule concerning property division upon divorce.* A trial court must have discretion to do what is equitable upon the facts and circumstances of each case." (Emphasis added.)

Equity may occasionally require valuation as of the date of the *de facto* termination of the marriage. The circumstances of a particular case may make a date prior to trial more equitable for the recognition, determination and valuation of relative equities in marital assets.

Indeed, inequity would likely result if this court were to blindly equate the termination of a marriage to the dissolution of a business partnership, and accept the position that if marital assets can disappear before the entry of the final divorce decree, the trial court loses all jurisdiction to divide and determine the equities therein since said assets and liabilities must be in existence at the moment of distribution. If a trial court was rendered powerless to recognize and determine property rights in assets that do not exist at the time of the final decree, one party, from the time of separation to the time of the final decree, could withdraw all funds and,

unilaterally and with impunity, squander the fruits of the marital labor. Such a position would not only be antithetical to public policy, but also to prior case law.

Other courts have shared our reluctance in establishing a simple formula for property division. The point has been well expressed in *Lacey* v. *Lacey* (1970), 45 Wis. 2d 378, 173 N.W. 2d 142, at page 383:

" * * * The formula for division derives from the facts of the individual case. If it is argued that this approach gives great leeway and also places a heavy responsibility on trial courts in divorce cases, there is no gainsaying that fact. However, both flexibility and responsibility are called for by the endless variety of human situations that come to court in family cases. No two are exactly alike."

In order to do equity, a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or *de facto* termination of the marriage, where reasonable under the facts and circumstances presented in a particular case. In this fashion, the trial court will have the necessary flexibility to exercise its discretion in making truly equitable awards consistent with legitimate expectations of the parties.*

The judicial task of effecting an equitable distribution of marital assets may on occasion be a difficult one, but it will hardly be novel. Seeking just and equitable results is and has been inherent in the judicial function; it has been a chief concern of the courts for many centuries.

For the foregoing reason, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., SWEENEY, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

HOLMES, J., concurring.   I wholeheartedly concur in this

---

* A trial court's discretion, while broad, is not unlimited. *Cherry, supra,* at page 355. In order " * * * to ensure the fullest possible review by an appellate court, a party may request that the trial judge make findings of fact and conclusions of law pursuant to Civ. R. 52. If the reviewing court has before it the trial court's findings of fact and conclusions of law, it can better determine if the trial court abused its discretion." *Id.,* at page 356.

opinion as another positive step, like *Cherry* v. *Cherry, supra,* in correcting some very unfortunate and misleading language in *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399. If this court will avail itself of the opportunity in the near future to recant and recuse the language of *Wolfe,* opining that a separation agreement is merged within the divorce decree, then all of the unfortunate dictum, as set forth in *Wolfe,* but not necessary to its determination, will be behind us.