473 A.2d 499

**Clarence L. SHARP**

v.

**Patricia T. SHARP.**

**No. 770, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

April 9, 1984.

388

390

Steven M. Jacoby, Hyattsville, with whom was Howard M. Rensin, Hyattsville, on the brief, for appellant.

William Bogen, Silver Spring, with whom were Bogen, Yavener & Berman, Silver Spring, on the brief, for appellee.

Argued before GARRITY, ALPERT and BELL, JJ.

ALPERT, Judge.

Clarence Sharp, appellant, and Patricia Sharp, appellee, were married on December 4, 1971. Both spouses were employed by the National Institutes of Health in Washington, D.C., appellant as an environmental engineer and appellee as a secretary. A daughter, Frances, was born on November 3, 1972. Appellee ceased working in September, 1972, two months before the birth of the couple's child. During appellee's employment, she gave appellant her paycheck; upon her resignation she gave appellant her retirement fund.

The parties resided in a trailer on a farm titled to appellant in Frederick County, Maryland. Sometime in 1976, appellant moved out of the "marital trailer" into a farmhouse located on the property. In 1978 he moved back into the trailer but slept in a separate bedroom where he shared his bed with the daughter. Appellant remained in the trailer for two-to-three months and then, on June 12, 1978, moved out of the trailer upon advice of counsel. According to appellee, appellant forcibly took Frances away from the trailer. For the following month, appellee had no telephone and appellant refused to give her money, padlocked the gas tank, and turned off the trailer's air-conditioning. Appellee

stated that appellant would not permit her to see her daughter for seven months.

Appellee left the trailer and farm in July 1978. Thereafter, appellant filed a Bill of Complaint for Divorce and Child Custody in the Circuit Court for Frederick County. On December 26, 1979, that court awarded appellant custody of Frances with visitation rights reserved to appellee. The Circuit Court denied appellant's prayer for absolute divorce and dismissed his Complaint.

On May 20, 1980, in the Circuit Court for Montgomery County, appellee filed for absolute divorce, custody, alimony, attorney's fees and an adjudication of the parties' property rights. Appellant filed a Motion Raising Preliminary Objection or in the alternative to transfer venue because of the pending existence of an identical action with identical issues in the Circuit Court for Frederick County. Appellant's Motion was granted on the issue of custody, and the remaining issues were set in for trial in Montgomery County.

On April 26, 1983, a decree of divorce *a vinculo matrimonii* was signed, granting appellee an absolute divorce from appellant based upon the grounds of constructive desertion in July, 1978. The husband was ordered to pay rehabilitative alimony of $150.00 per month for five years. Appellee was also granted a monetary award of $25,000.00, and $1,000.00 for partial reimbursement of attorney's fees.

Appellant raises these six issues on appeal:

I. The chancellor erred in finding that there was sufficient proof and corroboration of the allegations so as to justify the award of a divorce or alimony in this matter based upon the ground of constructive desertion.

II. The chancellor erred in making a monetary award from the marital property by failing to properly consider the husband's liabilities as well as his assets in determining the amount of marital property.

III. The chancellor erred in calculating the amount of marital investment made by the wife toward the

marital property and the span of time during which any non-monetary contributions could be considered as part of the marital property.

IV. The court was clearly erroneous in its award of alimony to the wife for an arbitrarily fixed time period when no need for alimony was demonstrated and the wife's income had significantly increased.

V. The chancellor abused his discretion in making an award of counsel fees to the wife when there was, by his own findings, no evidence supporting the wife's claim for counsel fees.

VI. The court erred in not granting the husband's Motion Raising Preliminary Objection or, in the alternative, to transfer venue.

## I.

In a two-pronged argument, appellant submits that the chancellor erroneously awarded appellee a divorce based on constructive desertion and that appellee failed to provide the degree of corroboration required to sustain her prayers for divorce and alimony. Our discussion of the former issue shall obviate discussion of the latter.

Before constructive desertion may be found, there must be conduct present which "renders impossible a continuation of marital cohabitation with safety, health and self-respect." *Ches v. Ches,* 22 Md.App. 475, 482–83, 323 A.2d 651 (1974) (and cases cited therein). This behavior must generally amount to a pattern of persistent conduct. *See, Coover v. Coover,* 258 Md. 643, 654, 267 A.2d 119 (1970). Where the conduct of one spouse to the other demonstrates "mere marital indifference or a lack of demonstrated love, or rudeness, or expressed desire to end the marital relation, [that indifference] will not legally justify the other spouse's departure from the marital household however intolerable such conduct might appear to the demeaned spouse." *Bryant v. Bryant,* 16 Md.App. 186, 191, 294 A.2d 467 (1972).

■ Under the standard articulated in *Bryant,* we might agree with appellant that appellee presented a weak case of constructive desertion as the result of appellant's actions. We note, however, that appellee's Bill of Complaint requested a divorce on grounds of *desertion by appellant.* Appellant conceded that he voluntarily moved out of the "marital trailer" in June of 1978 and that he and his wife never lived together thereafter. We therefore hold that the evidence adduced at trial adequately supported the granting of divorce to appellee on grounds of actual desertion. Accordingly, we shall affirm the chancellor's decision but on a different ground. *See, Read Drug & Chemical Co. of Baltimore City v. Colwill Constr. Co., Inc.,* 250 Md. 406, 423, 243 A.2d 548 (1968); *Schriver v. Schriver,* 185 Md. 227, 245, 44 A.2d 479 (1945).

## II.

Appellant objects to the chancellor's method of valuing appellee's monetary award. Specifically, appellee contends that the chancellor failed to consider appellant's liabilities when determining appellee's monetary award.

The watershed case on the issue of equitable distribution of marital property is *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982). In that case the Court of Appeals explained that Md.Cts. & Jud.Proc.Code Ann. § 3–6A–05 (1980 Repl.Vol., 1983 Cum.Supp.) requires that the chancellor engage in a three-step process when equitably distributing property. First, the chancellor must categorize all property owned by the parties as marital or nonmarital. Next, the value of the marital property must be determined. Finally, the chancellor may make a monetary award as an adjustment of the parties' equities and rights concerning marital property. *Id.* at 79, 448 A.2d 916.

■ The chancellor in the case at bar fully complied with the first step by classifying marital and nonmarital property. Deemed to be marital property were farm equipment and cattle purchased with community funds, that portion of

appellant's retirement funds contributed during the marriage, bank accounts, and appellee's automobile. Appellant's farm was labelled nonmarital "except to the extent that any of its present value is attributable to joint efforts or use of community funds during the marriage."

Appellant does not quarrel with the chancellor's categorizations. His argument focuses on the chancellor's valuation of this marital property in view of a recent mortgage placed on the farm. In order to better understand appellant's complaint, we must examine the financial history of the farm. In 1964, appellant purchased the Frederick County farm for $36,000. Appellant made a downpayment of $12,000 and financed the remaining $24,000 at an interest rate of six per cent per annum. At trial, appellant estimated that the farm's value had increased to $45,000 by the time the parties married in 1971. Further, appellant estimated that the farm's value had increased to $50,000 by the time the parties separated in 1978. Appellant testified that over the years he had refinanced the farm "probably six or seven times," however, no figures were provided at trial as to the existing liabilities on the farm as of any of the aforementioned dates. Appellant refinanced the farm in July, 1982 with the Federal Land Bank of Baltimore. He estimated that the farm's value at that time was $80,000. The mortgage, however, was in the amount of $125,000. When questioned on cross-examination why a $125,000 mortgage would be placed on property worth only $80,000, appellant explained:

A   Well, I farm with a farm cooperative, it's special for farmers. And they give you a leeway; it is not like a bank. You buy stock in a farm at $5 per 100 shares and you work that way, and they're more lenient with farmers, particularly all the financial problems and everything, rather than a regular bank.

Q   (BY APPELLEE'S COUNSEL)   So then, it's your testimony that the loan guidelines by which farmers obtain loans from a farm cooperative are different than other types of loans?

A Definitely.

The only attempt to provide evidence as to the actual value of the farm at the time of trial was made by appellee when she called J. Thomas Gilbert, a certified appraiser employed by the Federal Land Bank of Baltimore. Gilbert, however, had no personal knowledge of the subject farm and therefore was not permitted to testify further. Consequently, the *only* evidence of the farm's value was from appellant's testimony and from a settlement record indicating that the Federal Land Bank of Baltimore had in fact placed a $125,-000 mortgage on appellant's farm.

The chancellor found that "since [appellant] was able to place a mortgage of $125,000 on the farm in 1982, that would indicate a value of at least that amount at the present time." We perceive no error in such a finding because the chancellor had sufficient evidence before him to judicially notice that the farm had a value of at least $125,000. "Judicial notice of a fact is an acceptable substitute for formal proof of such fact, when formal proof is clearly unnecessary to enhance the accuracy of the fact-finding process." *Smith v. Hearst Corp.,* 48 Md.App. 135, 136, 426 A.2d 1, *cert. denied,* 290 Md. 721 (1981). Its use excuses a party having the burden of proving a fact from the necessity of producing formal proof by sworn witnesses and authenticated documents or objective evidence. Judicial notice is particularly appropriate "where the fact in question is known at once with certainty by all the reasonably intelligent people in the community without the need of resorting to any evidential data at all." *Id.* (*quoting* McCormick, *Law of Evidence* § 323 (1st ed. 1954)). Appellate review of judicial notice of facts of common knowledge is governed by the clearly erroneous standard of Maryland Rule 1086. *Id.* 48 Md.App. at 141, 426 A.2d 1.

Our research on this point has revealed but one other case where judicial notice was taken that a mortgage was based on the property's value. *Gunzer v. Town of New Fairfield,* 19 Conn.Super. 231, 111 A.2d 30, 32 (1955). Manifestly, banking institutions do not ordinarily grant mortgages on

property unless that property has a value which equals or exceeds the amount loaned. We recognize that there may be instances where a wealthy borrower may be able to secure a mortgage in an amount in excess of the property's actual market value. We believe, however, that in those cases, it should be the duty of the opposing party to rebut the inference by introducing proper rebuttal evidence.

In the case *sub judice,* appellee had the burden of proving the value of the farm at the time of trial for purposes of equitable distribution. Her attempts to introduce Gilbert's appraisal evidence were thwarted. Still, appellant had already put forth sufficient evidence of a commonly known fact to enable the chancellor to take judicial notice of the farm's worth. Accordingly, we hold that the chancellor was not clearly erroneous in valuing the farm at $125,000 based on appellant's ability to obtain a mortgage in that amount.

Satisfied that the chancellor correctly valued the farm, we now turn to appellant's argument that the chancellor erroneously failed to deduct the $125,000 mortgage from the value of the farm. Had the chancellor credited appellant with the mortgage of $125,000, the farm would have no value for purposes of marital award consideration, *i.e.,* the farm's value would not be included in the granting of a marital award. For support, appellant draws our attention to *Schweizer v. Schweizer,* 55 Md.App. 373, 462 A.2d 562, *cert. granted,* 298 Md. 49 (1983), a decision handed down subsequent to the chancellor's memorandum opinion in this case.

In *Schweizer,* this Court held that where the remaining value of the marital property had not yet been acquired, that amount could not be subject to equitable distribution. *Id.* 55 Md.App. at 378, 462 A.2d 562. We further stated that to qualify under this rule, "any unpaid marital debt must be directly traceable to the acquisition of marital property." *Id.* In other words, in the context of this case, appellant believes he should receive a credit to the extent that the proceeds of the existing mortgage loan are directly traceable to or used for the acquisition of marital property.

We find *Schweizer* distinguishable from the instant case. Our holding there spoke to the *acquisition of marital property;* here, it is not clear whether the $125,000 mortgage was made to pay off debts, to acquire marital property, some combination of those possibilities, or to intentionally dissipate the marital property to avoid the granting of a monetary award. For whatever reason, because appellant had recently fully refinanced the farm, he possessed nearly zero equity in that property at the time of trial. The chancellor, however, used the figure $125,000 when computing appellee's marital portion of the farm. A chancellor is presumed to know the law and is presumed to have performed his duties properly. *Lapides v. Lapides,* 50 Md.App. 248, 252, 437 A.2d 251 (1982). Hence, because the chancellor gave appellant no credit for the mortgaged farm, it is implicit that the chancellor found either that (1) appellant failed to establish by a preponderance of the evidence that any unpaid debt was directly traceable to the acquisition of marital property or (2) that the property had been encumbered to avoid equitable distribution. We cannot say that the chancellor erred in determining under the evidence presented that appellant failed to meet his burden of proving that there were "debts taken on to acquire the marital property." *Schweizer,* 55 Md.App. at 378, 462 A.2d 562. Although the appellee had the burden of proving the value of the marital property (as she had the affirmative of that issue), appellant had the burden of establishing traceable debt.

Likewise, there is support for the alternate conclusion that the property had been encumbered to avoid its inclusion toward a potential monetary award. In his memorandum opinion the chancellor stated the following concerning appellant's ability to pay alimony:

[Appellant's] financial statement ([Appellant's] Exhibit No. 6) shows a monthly deficit of $3500.00. This, despite the fact that he has a retirement income of $1900.00 per month. He claims a monthly farm loss of $1700.00, and living expenses for himself and Frances of $3700.00. Sig-

nificantly, despite an annual salary in recent years of approximately $40,000.00, [appellant] has incurred negligible income tax liability due to his claimed farm losses. *The Court deems incredulous his ability to survive such financial plight over the years, and finds his ability to pay the alimony ordered secreted among the allowances for depreciation and farm expenses.*

(emphasis supplied).

The preamble to Maryland's Marital Property Act states that "it is the policy of this State that when a marriage is dissolved *the property interests of the spouses should be adjusted fairly and equitably . . .* " 1978 Md.Laws ch. 794 (emphasis supplied). Thereupon, it would clearly be against the Legislature's stated public policy to permit one spouse to squander marital property and render it impossible to make an equitable award of property. *Berish v. Berish,* 69 Ohio St.2d 318, 432 N.E.2d 183, 185 (1982). Therefore, where a chancellor finds that property was intentionally dissipated in order to avoid inclusion of that property towards consideration of a monetary award, such intentional dissipation is no more than a fraud on marital rights, *see Levin v. Levin,* 166 Md. 451, 453, 171 A. 77 (1934), and the chancellor should consider the dissipated property as extant marital property under § 3–6A–05(a) to be valued with the other existing marital property. This principle would apply even where the dissipated property cannot be recovered because it is in the hands of a purchaser who took in good faith, without notice and for value. *See Oles Envelope Corp. v. Oles,* 193 Md. 79, 89, 65 A.2d 899 (1948).

In *Oles Envelope Corp., supra,* Mrs. Oles in addition to seeking a divorce *a mensa et thoro* charged that her husband's sale of stock in Oles Envelope Corporation was in fraud of her right to alimony and her children's right to support. Although under the facts of the case no basis was found for the conclusion that the sale was made by Oles to defraud his wife and children, the Court of Appeals observed:

There is unquestionably a difference between the claim of a wife upon her husband's estate and the claim of a wronged wife, who because of the misconduct of her husband becomes entitled to a divorce and has applied or is about to apply for alimony. *Levin v. Levin,* 166 Md. 451, 453, 171 A. 77. A husband has the right to make a transfer of his property, either with or without consideration, even though he strips himself of all means of supporting his wife, and leaves her without the means of subsistence, provided that he does so in good faith and without intention of defrauding her of her just claims upon him and his estate. *Feigley v. Feigley,* 7 Md. 537, 561, 61 Am.Dec. 375; *Sanborn v. Lang,* 41 Md. 107, 114; *Stewart v. Stewart,* 105 Md. 297, 303, 66 A. 16; *Mushaw v. Mushaw,* 183 Md. 511, 519, 39 A.2d 465. On the other hand, a conveyance made by a husband before and in anticipation of his wife's suit for alimony, or pending such suit, or after a decree has been entered therein in the wife's favor, to prevent her from obtaining alimony, is fraudulent and may be set aside, unless the grantee took in good faith, without notice and for value.

*Id.* 193 Md. at 88–89, 65 A.2d 899.

In *Colburn v. Colburn,* 15 Md.App. 503, 292 A.2d 121 (1972), a pre-Marital Property Act case, the husband retired as president of his company, surrendered his lucrative salary and transferred stock in his company to a nephew during the pendency of divorce proceedings. The chancellor there found that the purpose of the husband's acts was voluntarily to impoverish himself "so as to fraudulently deprive his wife of her claim for alimony." *Id.* at 515–16, 292 A.2d 121. We held that the chancellor was not clearly erroneous in finding that the former salary and stock holdings could be considered when determining the husband's actual capacity and wealth at the time of trial. *Id.* at 516, 292 A.2d 121. While *Colburn* dealt solely with alimony, we see no reason in logic or law why these same principles involving fraud and intentional dissipation should not apply with equal force to determination of a monetary award.

Other jurisdictions have discussed this topic of intentional dissipation of marital assets for the purpose of avoiding equitable distribution. Illinois law expressly provides that a chancellor dividing marital property shall consider all relevant factors including:

> the contribution or *dissipation* of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

Ill.Ann.Stat., ch. 40, § 503(c)(1) (Smith-Hurd 1980 Vol., 1983–84 Cum.Supp.) (emphasis supplied).[1] Still, the dissipation of marital assets in contemplation of divorce was not an acceptable practice prior to the enactment of § 503(c)(1). *In Re the Estate of Chandler,* 90 Ill.App.3d 674, 46 Ill.Dec. 46, 49, 413 N.E.2d 486, 489 (1980) (*citing Gercke v. Gercke,* 331 Ill. 413, 163 N.E. 323, 325 (1928)). Dissipation may be found where one spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage at a time where the marriage is undergoing an irreconcilable breakdown. *Klingberg v. Klingberg,* 68 Ill.App.3d 513, 25 Ill.Dec. 246, 250, 386 N.E.2d 517, 521 (1979). In *Hellwig v. Hellwig,* 101 Ill.App.3d 948, 57 Ill.Dec. 407, 428 N.E.2d 1087 (1981), the husband transferred certain funds and real estate after his wife informed him she had filed for dissolution of the marriage. The trial court found that the husband's acts manifested "a course of action designed to conceal, manipulate, or dissipate certain funds and real estate...." *Id.* 57 Ill.Dec. at 414, 428 N.E.2d at 1094. The Illinois intermediate appellate court stated that "resolution of this issue is a

---

1. When discussing the classification of property as marital or non-marital, the Court of Appeals in *Harper v. Harper, supra,* rejected Illinois' transmutation of property theory since Illinois law, unlike Maryland's, expressed a preference for classifying property as marital. *Id.* 294 Md. at 79, 448 A.2d 916. The *Harper* Court did, however, note the similarity between the Illinois and Maryland statutes. As the subject discussion concerns valuation of property and not the classification of marital property, we see no reason why we may not examine Illinois caselaw on this topic.

matter within the province of the trial court, and [the trial judge] was entitled to disbelieve or reject [the husband's] explanation of these transfers." *Id.* 57 Ill.Dec. at 415, 428 N.E.2d at 1095. That court went on to affirm a finding of dissipation where the husband transferred assets in a joint bank account one day after the dissolution action was filed. On the other hand, no dissipation could be found where real estate was sold seven months prior to the institution of the proceedings because the husband sold real estate as part of his normal business activities.

*See also In Re the Marriage of Sevon,* 117 Ill.App.3d 313, 73 Ill.Dec. 41, 74, 453 N.E.2d 866, 899 (1983) (no dissipation where money withdrawn by wife from credit union account was used for wife's own support and not to deplete marital property where wife's expenditures were adequately documented); *In Re the Marriage of Smith,* 114 Ill.App.3d 47, 69 Ill.Dec. 827, 830, 448 N.E.2d 545, 548 (1983) (dissipation found where husband had withdrawn funds from the joint credit union account where husband's testimony as to his use of these funds was vague and unsupported by records of the purported marital expenditures); *Klingberg v. Klingberg, supra, id.* (husband's withdrawal of funds from joint savings account during separation period demonstrated his attempt to unfairly seize and dissipate marital property); *Barriger v. Barriger,* 514 S.W.2d 114, 115 (Ky.App.1974) (where wife advised husband that she wanted a divorce and thereupon the husband dissipated marital funds on "women and gambling," trial court properly added that cash previously spent back into the parties' net marital estate when making its property distribution); *In Re the Marriage of Faulkner,* 582 S.W.2d 292, 295–96 (Mo.App.1979) (where jointly owned stocks were endorsed by husband and cashed by wife without sharing proceeds, and where bank accounts containing wife's severance pay and retirement benefits were appropriated solely by the wife, the trial judge did not abuse his discretion by including these depleted assets in the division of marital property); *Daniels v. Daniels,* 557 S.W.2d 702, 704 (Mo.App.1977) (where husband withdrew money from joint

credit union account two weeks before trial, the trial court should regard this maneuver as a fraudulent conveyance to hinder the distribution of marital property); *Berish v. Berish, supra* (dissipation found where husband removed funds from joint savings account before institution of divorce proceedings, but while parties were separated). For a further discussion on the dissipation of assets and fraudulent conveyances, see Golden, *Equitable Distribution of Property,* § 8.15 (1983).

■ In the instant case, the chancellor granted appellee alimony despite appellant's apparent lack of funds because appellant had secreted money through tax depreciation and farm expenses. It would not clearly be erroneous for the chancellor to infer that one who would secrete funds from the payment of alimony would also encumber property to avoid the consequences of a monetary award. One who would deviously attempt to avoid one type of marital award might also attempt to avoid another type of marital award. Accordingly, we cannot state that the chancellor was clearly erroneous in failing to credit appellant with the recent mortgage of $125,000.

### III.

■ Appellant challenges the chancellor's findings that farm equipment, bank accounts, cattle, an automobile and appellant's retirement benefits constituted marital property. He broadly, and incorrectly, posits that by making these findings the chancellor "completely disregarded the dictates of the monetary award section [Section 3–6A–05(b) ]." The classification of marital and non-marital property simply does not depend upon the nine factors set out in Section 3–6A–05(b). *Ward v. Ward,* 52 Md.App. 336, 340, 449 A.2d 443 (1982). The chancellor correctly concluded that the aforementioned items were marital property described in Section 3–6A–01(e).

Appellant further takes issue with the chancellor's computation of appellee's marital investment towards the parties'

marital property. In *Harper, supra,* the Court of Appeals articulated the proper method of determining a spouse's equitable share in property classified as part marital and part non-marital.

> [W]hen property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. Thus, a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment.

*Id.* 294 Md. at 80, 448 A.2d 916.

█ The chancellor found that the value of the improvements made on the farm during the course of the marriage was $5,000.00. Then, after applying the *Harper* ratio technique, the chancellor stated, "the ratio of the marital investment to the total marital and nonmarital investment is 10%, yielding a marital value of $12,500." This finding is supported by the evidence. The value at the inception of the marriage was $45,000. The chancellor found marital improvements to be worth $5,000 and then applied a 10% ratio to the total value of the farm in the amount of $125,000, *i.e.,* "a marital value" of $12,500.

█ As for the valuation of the other marital property, the chancellor's findings were supported by the testimony of both parties, income tax returns, depreciation schedules and other documents submitted by appellant. Accordingly, we shall defer to the chancellor's valuations of these items. Maryland Rule 1086.

### IV.

█ Appellant questions the chancellor's award of alimony to appellee. The chancellor reviewed the financial re-

sources of both parties, appellee's increase of salary since the parties' marriage, and her statement of necessary expenses. The chancellor concluded that based on appellee's improvement in earnings, "it is likely that she can become self-supporting in five years." Appellee was awarded alimony payments of $150 per month until April 1988.

Md.Ann.Code Art. 16, § 1(b) (1957, 1981 Repl.Vol., 1983 Cum.Supp.) enumerates those relevant factors the chancellor shall consider when determining the propriety of granting alimony. While the chancellor viewed many of these eleven factors, he failed to expressly refer to the monetary award granted appellee. We point out that monetary awards made under §§ 3–6A–05 and 3–6A–06 are factors to be considered by a chancellor when awarding alimony. Art. 16, § 1(b)(1)(ii). In *Grant v. Zich,* 53 Md.App. 610, 618, 456 A.2d 75, *cert. granted,* 296 Md. 110 (1983), we stated that the chancellor is not "necessarily required to go through a detailed checklist of the statutory factors. . . . " Our review of the record and the chancellor's memorandum opinion persuades us that the chancellor gave due consideration to the enumerated factors. Commendably, during the trial the chancellor attempted to elicit facts concerning the financial status of the parties. Manifestly, the attempts reflected the chancellor's desire to receive sufficient information from which to consider fairly a monetary award and/or alimony. The hotly disputed issue of marital property loomed in the forefront and hardly would have been overlooked by the chancellor. We reiterate that a chancellor is presumed to know and apply the law. *Lapides v. Lapides, supra.*

## V.

Appellant takes issue with the chancellor's order that he partially reimburse appellee $1,000 for attorney's fees "although there was no evidence in support of [appellee's] claim for attorney's fees." In her brief, appellee concedes that no evidence of attorney's fees was adduced at trial.

We do not view this lack of evidence as being fatal to appellee's claim for attorney's fees.

> Attorney's fees are awarded in a divorce case according to the factors of labor, skill, time, and benefit, as well as the financial resources of the party charged. *Wallace v. Wallace,* 46 Md.App. 213, 229 [416 A.2d 1317] (1980). The amount of the award of attorney's fees is within the chancellor's sound discretion, and this Court may not disturb that award absent evidence of an abuse of that discretion. *Sody v. Sody,* 32 Md.App. 644 [363 A.2d 568] (1976). Upon review of the record we find no abuse of discretion.

*Duskin v. Duskin,* 51 Md.App. 451, 462, 443 A.2d 1010 (1982).

The chancellor stated that he had "reviewed the file," that it is "obvious" that attorney fees were incurred in the litigation of this case. The chancellor also had the opportunity to observe appellee's counsel's conduct in the trial before him. Hence, we do not perceive any abuse of discretion by the chancellor's award of reimbursement fees. *See, Foster v. Foster,* 33 Md.App. 73, 77–78, 364 A.2d 65 (and cases cited at footnote 8), *cert. denied,* 278 Md. 722 (1976).

## VI.

Finally, appellant protests that the chancellor improperly failed to grant his motion to transfer venue from the Circuit Court for Montgomery County to the Circuit Court for Frederick County.

As previously stated, appellant filed a Bill of Complaint in the Circuit Court for Frederick County, seeking an absolute divorce and custody of the parties' daughter. Appellee filed no cross-complaint to the divorce but contested custody. Appellant prevailed in his custody action, but his prayer for divorce was dismissed. Subsequently, appellee filed for divorce, custody, and equitable distribution of marital property in the Circuit Court for Montgomery County. Appellant filed a Motion Raising Preliminary Objection due to the pendency of the Frederick County action. Maryland Rule

323(a)(6). This Motion was granted only on the matter of Frances' custody and the remaining issues of divorce and distribution were tried in Montgomery County.

Appellant argues that appellee's failure to file a cross-complaint in the Frederick County's divorce proceedings demonstrated her desire to shop for a more desirable forum. We are unaware of any rule requiring a person to file a cross-complaint for divorce. There is no question that appellee resided in Montgomery County when she filed her suit for divorce. Maryland Cts. & Jud.Proc.Code Ann. § 6–202 (1980 Repl.Vol., 1983 Cum.Supp.) confers venue in divorce proceedings where the plaintiff resides. Accordingly, since there was nothing further to litigate with regard to appellant's request for a divorce in Frederick County, appellee was within her rights to bring an action in the County where she resided. Appellant's Motion Raising Preliminary Objection was correctly denied.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.