Merinda **HERRON**, Appellant,

v.

Henry Clifford **JOHNSON**, Appellee.

No. 96–FM–1417.

District of Columbia Court of Appeals.

Submitted June 15, 1998.

Decided July 16, 1998.

DCMR § 1825, published in 39 D.C. Register at 4809–4810.

Louis Fireison and Matthew H. Goodman, Bethesda, MD, filed a brief for appellant.

No brief was filed for appellee.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

■ Must the trial court, exercising its duty in a divorce action to distribute the marital property "in a manner that is equitable, just and reasonable," D.C.Code § 16–910(b) (1997), distribute pension rights even though one spouse has entirely dissipated the pension funds? We answer that question yes. We therefore vacate the judgment of the trial court insofar as it refused to distribute the pension rights at issue, and remand for further proceedings consistent with this opinion.

## I.

Merinda Herron and Henry Clifford Johnson were married in 1977 and had three children together. Herron is a pediatrician; Johnson, though not employed at the time of the divorce, was an insurance salesman and manager from 1977 to 1994. As part of his compensation, he received a pension from his employer.

The parties separated in August 1995, and in November 1995 Herron filed for divorce. Johnson did not contest the divorce and did not appear at the evidentiary hearing in September 1996. Herron testified and presented supporting documentation that Johnson had begun withdrawing his pension piecemeal in 1987 and received a final lump sum distribution of some $85,000 in September 1993.[1] Based on additional testimony by Herron, the trial court found that the withdrawal had been without Herron's knowledge and consent. The court also found that the pension funds were accumulated during the marriage, hence were marital property, and that Johnson had withdrawn the funds for his own personal use. The court nevertheless refused to distribute the pension rights because, by the time of divorce, the pension funds no longer existed: they were, the court concluded, "not a piece of marital property that is available for distribution at this time."

## II.

■ D.C.Code § 16–910(b), in relevant part, provides that upon the entry of a final decree of divorce, the court

> shall ... distribute all ... property accumulated during the marriage ... in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: ... each party's contribution to the ... *dissipation* or depreciation in value of the assets subject to distribution. [Emphasis added.]

While the trial court has "broad discretion" in achieving a fair division of marital property under this section, it "must consider all factors relevant to the case before it." *Negretti v. Negretti*, 621 A.2d 388, 389 (D.C. 1993). Pension rights, to the extent acquired during the marriage, are property subject to distribution under § 16–910(b). *Sanders v. Sanders*, 602 A.2d 663, 669 (D.C.1992); *Barbour v. Barbour*, 464 A.2d 915, 919 (D.C.1983).

Section 16–910 (b) expressly requires the court, in effecting distribution, to consider "dissipation ... in value" of the property by a party to the divorce. The issue before us

1. According to Herron, the Internal Revenue Service was attempting to assess against her the delinquent taxes owing on the pension.

is whether that obligation extends to property which no longer exists at the time of dissolution because it has been wholly dissipated. The answer is not difficult. It surely would not further the aim of an "equitable, just and reasonable" distribution to exempt a complete dissipation of property from the statute's reach but not a partial one. If the statute required distributable property to be owned by the spouses at the time marital litigation commences, *see, e.g., Panhorst v. Panhorst*, 301 S.C. 100, 390 S.E.2d 376 (Ct. App.1990) (applying statute so requiring), the trial court's decision here would be sound, though the result arguably inequitable. But § 16–910(b) refers only to property "accumulated during the marriage," and given that language, we are under no constraint to reward a spouse who completely dissipates marital property prior to the start of divorce proceedings.

Once before, this court has recognized the statutory importance of dissipation as a factor in arriving at an equitable division of property. In *Cox v. Cox*, 639 A.2d 97 (D.C. 1994), we held "demonstrably relevant" proffered testimony about assets ostensibly owned by a third person "but which arguably contained funds transferred by the husband in order to deplete the marital estate and to reduce the wife's share." *Id.* at 99. Underscoring § 16–910(b)'s reference to dissipation, we stated that "[a] spouse may not circumvent the equitable distribution of the marital estate by concealing marital assets or by manipulating title to them." *Id.* Maryland courts, similarly, have held that "it would clearly be against the Legislature's stated public policy to permit one spouse to squander marital property and render it impossible to make an equitable award of property." *Sharp v. Sharp*, 58 Md.App. 386, 473 A.2d 499, 505 (1984) (citing *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183, 185 (1982)). Thus, in Maryland,

> where a chancellor finds that property was intentionally dissipated in order to avoid inclusion of that property towards consideration of a monetary award, such intentional dissipation is not more than a fraud on marital rights, and the chancellor should consider the dissipated property as extant marital property ... to be valued

with the other existing marital property. This principle would apply even where the dissipated property cannot be recovered because it is in the hands of a purchaser who took in good faith, without notice and for value.

*Id.* (citations omitted).

At the same time, recognizing that proof that a spouse purposely dissipated marital property to avoid a fair distribution will often be circumstantial, most courts considering the issue have employed a functional test:

> [d]issipation occurs "where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown."

*Murray v. Murray*, 636 So.2d 536, 538–39 (Fla.Dist.Ct.App.1994) (quoting *Gentile v. Gentile*, 565 So.2d 820, 823 (Fla.Dist.Ct.App. 1990)); *Ross v. Ross*, 90 Md.App. 176, 600 A.2d 891, 898 (1992); *Sharp*, 473 A.2d at 506; *Clements v. Clements*, 10 Va.App. 580, 397 S.E.2d 257, 261 (1990) (quoting *Hellwig v. Hellwig*, 100 Ill.App.3d 452, 55 Ill.Dec. 762, 426 N.E.2d 1087, 1094 (1981)); *see also In re O'Neill*, 138 Ill.2d 487, 150 Ill.Dec. 607, 563 N.E.2d 494, 498–99 (1990); *In re Marriage of Smith*, 114 Ill.App.3d 47, 69 Ill.Dec. 827, 448 N.E.2d 545, 548 (1983) (at time when marriage is "in serious jeopardy"). The breakdown need not coincide with formal separation or initiation of legal proceedings. *Marriage of Smith*, 69 Ill.Dec. 827, 448 N.E.2d at 548 ("It is not necessary to show that the dissipation occurred at the time the parties separated or after dissolution proceedings have been instituted, for such a requirement would be overly restrictive.") (citation omitted); *Berish*, 432 N.E.2d at 185 ("In order to do equity, a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or *de facto* termination of the marriage, where reasonable under the facts and circumstances presented in a particular case. In this fashion, the trial court will have the necessary flexibility to exercise its discretion in making truly equitable awards consistent with legitimate expectations of the parties."). And "[o]nce the aggrieved spouse shows that

marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper [*i.e.*, marriage-related] purpose." *Clements*, 397 S.E.2d at 261 (citations omitted); *see also Jeffcoat v. Jeffcoat*, 102 Md.App. 301, 649 A.2d 1137, 1142 (1994) (After the "party making the allegation ... establishes a prima facie case that monies have been dissipated, ... the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate.").

Finally, consistent with the equitable purpose of distribution under statutes like § 16–910(b), courts have held that dissipated property must be distributed like any other despite "the present nonexistence of [the] marital property." *A.I.D. v. P.M.D.*, 408 A.2d 940, 943 (Del.1979); *see also Rohling v. Rohling*, 379 N.W.2d 519, 522 (Minn.1986) (Where "the statute necessarily defines marital property as that which was *acquired* during the marriage ..., the property need not necessarily be 'present' at the time of dissolution.") (emphasis in original); *Berish*, 432 N.E.2d at 185 ("[I]nequity would likely result if this court were to blindly equate the termination of a marriage to a dissolution of a business partnership, and accept the position that if marital assets can disappear before the entry of a final divorce decree, the trial court loses all jurisdiction to divide and determine the equities."); *Sharp*, 473 A.2d at 505.

■■■ We adopt the teaching of these decisions. Dissipation under § 16–910(b) is the disposition of marital property by a spouse in a manner intended to "circumvent the equitable distribution of the marital estate." *Cox*, 639 A.2d at 99. This may be shown by prima facie evidence, unrebutted, that the spouse used marital property for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage was undergoing an irreconcilable breakdown. Upon a finding of dissipation, the court must distribute the property in question—and enter judgment accordingly—whether or not the asset still exists. Whether and how that judgment can be enforced may depend on future events. *See, e.g., A.I.D. v. P.M.D.*, 408 A.2d at 943 (award of $40,000 to wife "payable out of future trust income" from husband's *inter vivos* trust, "if necessary").

## III.

In this case, the trial court found that Johnson's pension funds were accumulated during the marriage, and that he withdrew them for his own personal use without the knowledge or consent of Herron.[2] Because the court erroneously believed it was not authorized to distribute funds no longer in existence, however, it made no determination as to the condition of the parties' marriage at the time Johnson withdrew the funds—a matter of importance, since Johnson began piecemeal withdrawals as far back as 1987. We thus lack an adequate record on which to decide the ultimate question of whether the withdrawals (all or part of them) were made in order to defeat Herron's equitable distribution rights. On remand, the trial court must address this issue and, if it finds that dissipation occurred within the definition adopted here, distribute the pension rights in an equitable manner and reenter judgment accordingly.[3]

*Judgment vacated in part, and case remanded.*

---

**2.** Johnson, who did not appear for the evidentiary hearing, never attempted to rebut these findings, nor did he later move to set aside the judgment. *See* Super. Ct. Civ. R. 59 & 60.

**3.** In other circumstances, the trial court might have been able to offset dissipated assets against other property distributed to the dissipating spouse. *See, e.g., Hartland v. Hartland*, 777 P.2d 636, 643 (Alaska 1989); *In re Marriage of Jones*, 187 Ill.App.3d 206, 134 Ill.Dec. 836, 543 N.E.2d 119, 137 (1989); *Lynch v. Lynch*, 411 N.W.2d 263, 266 (Minn.Ct.App.1987). But here the sole remaining property distributed was the marital home, and the court awarded Herron one hundred percent ownership of it based upon uncontested proof that she had made all of the mortgage, utility and maintenance payments, that Johnson had contributed nothing toward it, and that Herron lived in the home with the couple's children of whom she had custody.