OPINION
Defendant-appellant, Eugene F. Rheude, appeals from a judgment granting a divorce filed on September 12, 1996 by the Clermont County Court of Common Pleas, Domestic Relations Division, terminating his thirty-three year marriage and awarding spousal support to plaintiff-appellee, Natalie M. Rheude.
The parties were married on August 24, 1963 and have one child, Jeff, who was emancipated at the time of the divorce. On January 26, 1996, appellee filed a complaint for divorce. At the same time, she moved for an order granting her temporary spousal support in the amount of $1,000 per month. On February 20, 1996, appellant filed an answer and counterclaim and requested a hearing on the issue of spousal support. The trial court set a hearing date of June 20, 1996, and issued a temporary order under Civ.R. 75(M) requiring appellant to pay spousal support in the amount of $500 per month.
On June 20, 1996, a magistrate conducted a hearing on the issue of spousal support. The transcript of that hearing indicates, and neither party disputes, that appellee's counsel served the magistrate and appellant's counsel with a written memorandum concerning spousal support.[1] It is unclear from the proceedings, however, whether appellee's memorandum was actually filed with the clerk of the court at that time because appellee's memorandum was not entered on the trial court's docket until August 22, 1996.[2] Meanwhile, appellant filed his memorandum concerning spousal support on July 17, 1996, and the magistrate's decision concerning the division of marital property and spousal support issued July 18, 1996. Appellant claims, in addition, that he was not notified of the magistrate's decision until August 15, 1996. (Appellee reports no delay in receiving notification of the decision.)
Appellant filed a request for findings of fact and conclusions of law under Civ.R. 52 on August 22, 1996, seven days after he received the magistrate's decision.[3] In addition, appellant submitted proposed findings of fact and conclusions of law to the trial court on September 6, 1996.
On September 12, 1996, the decree of divorce was journalized at 10:58 a.m. One hour later, the magistrate's amended decision denying appellant's request for findings of fact and conclusions of law and rejecting appellant's proposed findings and conclusions was entered on the docket. The basis for the amended decision was: (1) appellant's request was not timely filed, and; (2) the July 18, 1996 magistrate's decision contains extensive statements of both fact and law and the findings and conclusions suggested by appellant were unnecessary and would be repetitive.
At 4:24 p.m. on October 9, 1996, appellant filed this appeal. One hour later, appellant moved, under Civ.R. 60(A) and (B)(1) and (5) for relief from judgment arguing that since the amended magistrate's decision was not filed until one hour after the decree of divorce was granted, appellant was denied his right to object to the amended magistrate's decision.[4] On October 17, 1996, the trial court denied appellant's motion.
In his appeal to this court, appellant raises three assignments of error for review. In his first assignment of error, appellant states that the trial court erred by entering the divorce decree before the amended magistrate's decision was filed. Appellant argues that as a result of this sequence of events he was precluded from filing objections to the amended magistrate's decision.
We cannot help but observe that this case appears to have an unusual number of procedural irregularities for a divorce case that is not extraordinary in any way. However, after carefully reviewing the record, we do not find that any of these irregularities prejudiced appellant. Specifically, the trial court's filing of the divorce decree one hour before it filed the amended magistrate's decision is certainly not preferred, but in this case, we do not find that it was detrimental to appellant.
Civ.R. 53 sets forth the procedure to be followed in proceedings before a magistrate. After a hearing, the magistrate is required to prepare, sign, and file a decision which is to be served on all parties. Civ.R. 53(E)(1). For the magistrate's decision to be effective, it must be adopted by the trial court. Civ.R. 53(E)(4)(a). The parties have fourteen days following the filing of the magistrate's decision to file written objections. Civ.R. 53(E)(3)(a). The trial court may, however, adopt a magistrate's decision and enter a judgment without waiting for objections from the parties. Civ.R. 53(E)(4)(c). If the trial court enters a judgment before the fourteen-day period expires, any written objections timely filed by the parties act as a stay of execution until the court addresses the objections. Id.
In this case, the trial court entered its final judgment (the divorce decree) before the fourteen-day period expired, and, indeed, one hour before it even started to run. Although the order in which the documents were filed may have been improper, it did not preclude appellant from seeking to trigger the stay of execution of the judgment by filing his objections to the amended magistrate's decision.
Even if appellant were prohibited from objecting to the magistrate's amended decision due to the order in which the decisions were docketed, such error was harmless. The record indicates that the trial court adopted the magistrate's amended decision without modification. Therefore, we can presume that the trial court did not find an error of law or other defect in the magistrate's amended decision. See Civ.R. 53(E)(4)(a). In addition, the magistrate's amended decision was merely a denial of appellant's Civ.R. 52 request for findings of fact and conclusions of law. In light of the fact that the magistrate's original decision contains extensive findings of fact and conclusions of law, we do not find that the decision by the magistrate harmed appellant. The court did not abuse its discretion by rejecting appellant's proposed findings of fact and conclusions of law since they were filed on September 6, 1996, several days after the seven-day limit set forth in Civ.R. 52 had passed. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant argues that the trial court erred and abused its discretion when it designated June 20, 1996, the date of the final hearing, as the termination date of the marriage. Appellant contends that the termination date of the marriage should have been October 13, 1995, the date the parties separated and appellee moved out of the marital residence.
In order to divide marital property in a divorce proceeding, the trial court must first determine the end date of the marriage. See R.C. 3105.171 (A)(2) and (B). The statutory definition of the phrase "during the marriage" gives guidelines for determining the termination date of the marriage, and is set forth in R.C. 3105.171(A)(2). It states:
 "During the marriage" means whichever of the following is applicable:
 (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court. (Emphasis supplied.)
The trial court is vested with broad discretion in determining the duration of the marriage. Berish v. Berish (1982), 69 Ohio St.2d 318,319. The trial court's decision will not be reversed on appeal absent an abuse of discretion. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id. at 219.
In this case, the trial court defined the termination date of the marriage as the date of the final hearing, and not as the date the parties ceased living together. In doing so, the trial court observed that although appellee moved out in October 1995, neither party initiated any action to legally terminate the marriage until January 1996 when appellee filed for divorce, after which the case proceeded in a timely fashion. In addition, appellant testified that even after October 1995, he paid some of appellee's bills (automobile loan, insurance, rent) out of the parties' joint checking account. In light of the standard set forth in R.C. 3105.171, and based upon the record below, we do not find that the trial court abused its discretion when it chose to use the final hearing date as the date of the end of the marriage. Appellant's second assignment of error is overruled.
Finally, in his third assignment of error, appellant asserts that the trial court abused its discretion when it ordered him to pay permanent spousal support in the amount of $1,000 per month. Appellant argues that appellee failed to demonstrate her need for spousal support, and, therefore, the trial court acted in an unreasonable and arbitrary manner by awarding it. Appellant's third assignment of error is not well-taken.
Based upon the facts and circumstances of each case, the trial court has broad discretion to determine the proper amount of spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Hutchinson v. Hutchinson (Aug. 26, 1996), Clermont App. No. CA96-03-030, unreported at 3. A reviewing court should not substitute its judgment for that of the trial court unless the lower court abused its discretion. Kunkle, 51 Ohio St.3d at 67; Blakemore, 5 Ohio St.3d at 219.
We have recently held that need is an essential element in determining whether an award of spousal support is appropriate and reasonable. Carnahan v. Carnahan (Mar. 3, 1997), Clermont App. No. 96-08-072, unreported at 8. We must emphasize, however, that need is a "relative term, the conception of which must, within reasonable limits, vary with the personal situation of the individual employing it." Kunkle at 69. Awards of spousal support also must be reviewed in light of the "totality of the circumstances" and should be "fair, equitable, and in accordance with law." Id.; Kaechele v. Kaechele (1988), 35 Ohio St.3d 93,94. In sum, the goal in awarding spousal support should be "to reach an equitable result." Kaechele, 35 Ohio St.3d at 96.
The trial court derives its power to award spousal support from R.C. 3105.18. See Kunkle at 67. R.C. 3105.18(C) sets forth fourteen factors for the trial court to consider in determining whether spousal support is "appropriate and reasonable."[5] The lower court must consider each factor and not base its decision on any one factor in isolation. Kaechele, 35 Ohio St.3d at 96. The payee spouse's need for financial support is inherent in some, but not all, of these factors, including: the income of the parties; the relative earning abilities of the parties; the retirement benefits of the parties; the relative extent of education of the parties; the relative assets and liabilities of the parties; the time and expense necessary for the payee spouse to acquire education, training or job experience in order to obtain appropriate employment, and the lost income production of either party resulting from that party's marital responsibilities. R.C. 3105.18(C)(1)(a), (b), (d), (h), (i), (k), and (m).
However, R.C. 3105.18(C) also requires the trial court to consider factors which do not solely address the payee spouse's need for spousal support, but which assist the trial court in achieving an equitable result. These include: the duration of the marriage, the standard of living of the parties established during the marriage, the relative extent of education of the parties, the contributions of each party to the education of the other, the tax consequences of a spousal support award, and the lost income production due to a spouse's marital responsibilities. R.C. 3105.18(C)(1)(e), (g), (h), (j), (l), and (m).[6] The statute instructs courts to consider "any other" relevant or equitable factor. 3105.18(C)(1)(n).
In this case, the evidence presented at the final hearing revealed the following: The parties were married for thirty-three years. During the early years of the marriage, appellee, who graduated from high school but did not attend college, was the primary wage earner while appellant completed his bachelor's degree. Appellant held co-op jobs while he was an undergraduate, but his income was used to pay for his college expenses. In 1965, appellant began working full time. He is currently employed as a commercial artist earning approximately $70,000 per year. Appellant's net monthly income is $3,262.61. His monthly living expenses are approximately $2,508, including a car payment of $319.60 per month.
From 1965, when appellant began working full time, until 1970, when Jeff was born, appellee worked part time as a secretary. Appellee was also responsible for the housework, laundry, cooking, shopping, and the family finances. She did not work from 1970 until 1980 so that she could care for Jeff. Appellant testified that appellee was "an excellent mother and homemaker." He also testified that although he did not prevent her from working while their son was young, he wanted her to stay home with their son. Her management of the family finances resulted in the growth of retirement funds and a stock fund. Appellee resumed part-time employment in 1980. In 1995, she began working full time as a claims adjuster for the Lazarus department store. Appellee currently earns about $21,000 annually. Her net monthly income is about $1,195, and her monthly living expenses are $1,648. On her current salary, she is unable to save any money. Appellee moved out of the marital residence in October 1995 and now rents a twobedroom apartment. Appellant continues to live in the marital home.
By stipulation of the parties, appellee received one half the value of the equity in the marital residence, or $40,500. Each of the parties was awarded a stock account valued at $14,000. Appellee received an IRA account valued at $22,000; and appellant, an IRA account valued at $24,000. Appellant also was awarded one half of the marital portion of three pension plans.
In light of the foregoing, including, especially, the close margin between appellee's income and her expenses, the long duration of the marriage, the substantial disparity in the parties' incomes, the relative earning abilities of the parties, the fact that appellee supported appellant while he obtained his undergraduate education, and appellee's lost income production capacity as a result of her shouldering substantial marital and parental responsibilities, we find no abuse of discretion by the trial court in awarding appellee spousal support in the amount of $1,000 per month. Furthermore, since the trial court specifically reserved jurisdiction over the issue of spousal support, the award can be modified or terminated if there is an appropriate change in circumstances.
Appellee's third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] References in the transcript to the court's receipt of the memorandum include the following:
 MR. FERENC (counsel for appellee): We'd have no further questions.
THE COURT: Okay. Have a seat. Closing?
 MR. FERENC: Judge, I have prepared, just on the issue of spousal support, a memorandum on that. I'll provide Mr. Hamilton [counsel to appellant] a copy of that.
* * *
 MR. FERENC: We would, again, submit our memorandum and leave the balance of the — of those issues to the Court.
 THE COURT: I'll give you an opportunity to file a closing memo as well, but do you have any closing you want to present?
 MR. HAMILTON (counsel for appellant): Excellent. Yes, I do. And that was my — my first remark is that I would ask for some time to file this.
* * *
THE COURT: Okay.
* * *
 THE COURT: I'll take it under advisement and issue a written decision. How much time do you need to get your memo in?
 MR. HAMILTON: Well, I'm going on vacation next Friday, so I'll do it before then[.]
[2] Local Rule 1.4 of the Clermont County Court of Common Pleas, Domestic Relations Division, states that attorneys "must file the original of all pleadings with the Clerk of Courts."
[3] Civ.R. 52 (findings by the court) provides:
 When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * * not later than seven days after the party filing the request has been given notice of the court's announcement of its decision * * *.
[4] Civ.R. 60(A) (Relief from judgment or order) states:
(A) Clerical mistakes
 Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court * * * on the motion of any party * * *. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.
 Civ.R. 60(B) (Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud; etc.) states:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; * * * (5) any other reason justifying releif from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the judgment or suspend its operation.
[5] R.C. 3105.18(C)(1) states:
 In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, * * * the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning ability of the parties;
 (c) The ages and the physical, mental, and emotional condition of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contributions of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
[6] Some of the factors, such as the extent of the parties' education, the contributions of each party to the education of the other and the lost income production capacity due to a party's marital responsibilities, fall into both categories.