## Carter v. Carter
*[Cite as 7 AOA 488]*

*Case No. 89-G-1518*
*Geauga County, (11th)*
*Decided September 28, 1990*

*Jay A. Hollingsworth, 10771 Mayfield Road, Chardon, Ohio 44024, for Plaintiff-Appellee.*

*Stanley Morganstern, One Public Square, Suite 800, Cleveland, Ohio 44113 for Defendant-Appellant.*

CHRISTLEY, P.J.

Appellant Paul R. Carter and appellee Rebecca S. Carter were married on January 28, 1961. The parties had two children, who are now emancipated. On April 19, 1989, the Geauga County Common Pleas Court granted a divorce to appellant, divided the parties' assets and debts and awarded $2,334.00 per month as alimony to appellee for her separate maintenance and support.

On May 5, 1989, appellant timely filed a notice of appeal of the April 19, 1989 judgment

entry. On May 19, 1989, the court entered judgment to stay the division of the assets pending appeal.

Appellant assigns the following as error:

"1. The trial court abused its discretion in determining the value of appellant's business in the absence of competent, credible evidence supporting its conclusion.

"2. The trial court erred to the prejudice of appellant in allowing appellee's expert to testify as to his opinion of the value of appellant's company over appellant's objection.

"3. The trial court abused its discretion by awarding appellee the marital assets, excluding appellant's business, based on inaccurate findings of fact as to the value of that business.

"4. The trial court abused its discretion by granting appellee alimony in the sum of $2,380.00 per month until the death of either party, remarriage of appellee or further order of court when such order was inequitable under the manifest weight of the evidence."

In his first assignment of error, appellant argues that the court erred in its valuation of the close corporation, Robert Carter & Associates, Inc. Likewise, appellant disputes the accuracy of the valuation of the business in relation to the appellee's award of the other marital assets in his third assignment. Since both assignments address substantially the same issue, this court will consider them together.

Although appellant now disputes the qualifications of appellee's expert witness on valuation, the record shows that when the witness was being qualified as an expert, appellant's counsel failed to object to or question his qualifications at that time. Ordinarily, a reviewing court will only consider those issues which were raised before the trial court. Furthermore, the qualification of an expert witness is within the trial court's discretion, which is conclusive unless it is clearly shown to be erroneous. *Fulton v. Aszman* (1982), 4 Ohio App. 3d 64, paragraph one of the syllabus.

The record demonstrated that Mr. Herbert had been a CPA since 1959; had been certified as a management consultant in 1971; had taken continuing education courses; and, had been involved in the evaluation of business entities for approximately 25 years. Considering these qualifications, the trial court did not abuse its discretion in permitting the witness to testify as an expert witness.

Appellant also argued that the court overvalued the close corporation, Robert Carter & Associates, Inc. The court valued the corporation at $250,000. By reviewing the record, this court was able to determine the source of this figure. The appellee's expert witness testified that the fair market value of the corporation was somewhere between $331,500 and $376,000. Appellant specified that there was $128,321 of corporate debt on which he was also personally liable. (His accountant had previously testified to $110,000 of corporate debt, but appellant indicated in his own testimony that the $128,000 shown on defendant's Exh. B was accurate. ) When the $128,321 corporate debt is subtracted from $376,000, it leaves $247,679. Finally if the $6,749 owed on the wife's automobile is removed from and added back in to the corporate debt, the remainder is $254,428. This figure is very close to the trial court's $250,000 figure. Although the trial court should have shown how it arrived at the figure, this court is satisfied that there was sufficient evidence in the record to support this determination.

In support of his position that the corporation was overvalued, appellant cites *Briggs v. Briggs* (Feb. 17, 1989), Geauga C.A. 1427, unreported. However, an inspection of that case shows there was competent credible evidence to support the trial court's finding that the corporation had *no* value. Each case must be examined on its own terms and the facts on valuation of the corporation in the *Briggs* case have no relevance to the valuation of the corporation in this case.

Appellant also argued that the court incorrectly characterized a 1986 Oldsmobile and its debt as a marital asset and debt respectively when the car was actually owned by the corporation. This contention does not have merit. The corporation itself was characterized as a marital asset, and the car was part of that asset. When the Oldsmobile and its corresponding loan was awarded to the appellee wife, that debt was removed from the total corporate debt. Thus, the corporate valuation was increased, and except for the car, the entire corporate asset was conferred on the appellant-husband. Since there was sufficient evidence in the record to support this determination, it was not error to give the appellee the Oldsmobile as a marital asset.

Appellant also argued that the court failed to recognize and value business loans personally guaranteed by him. As indicated previously, the

corporate loans were already figured in the $250,000 valuation. An inspection of the April 19, 1989 judgment entry of divorce, showed that the court designated these business loans to be of an "unknown" amount and "actually covered in stock evaluation hereinabove." Appellant seems to be implying that there are additional loans not accounted for in the final division. That is not the case. The judge's use of the term "unknown" is unfortunate, but when the evidence is scrutinized it is clear that he was trying to indicate that there was no evidence of any other loans other than what were considered in the corporate valuation.

The classification of the debts guaranteed by the husband on behalf of the corporation as "non-marital" is also unfortunate. It is apparent, however, that the non-marital classification is merely an attempt to distinguish this particular debt from personal or familial debt as opposed to debts of the corporation. The end result is that despite the loose categorization as non-marital, the judge treats this as a marital debt in that he incorporates it into the valuation of the corporation; thus, it is equally apportioned and shared by both parties. Had he continued to treat it as a non-marital debt in the traditional sense, the husband would have had to bear the full weight of the debt instead of sharing it with the wife by reducing the corporate value. In conclusion, we find that the use of the term "unknown" does not constitute error and likewise we find that the categorization of these particular corporate debts as non-marital assets is non-prejudicial to the appellant.

Appellant further maintained that the court erred when it tried to make the property division "equal" when, in fact, the property division does not have to be equal, merely equitable. In *Kaechele v. Kaechele* (1988), 35 Ohio St. 3d 93, 95, the court held:

"In *Cherry, supra,* we rejected a flat equal property division rule and held that equal division *should be the starting point* of the trial court's analysis when it considers the factors listed in R.C. 3105.18 and all other relevant factors. An unequal property division does not, standing alone, amount to an abuse of discretion. Equitable need not mean equal." (Emphasis added.)

Also, see, *Cherry v. Cherry* (1981), 66 Ohio St. 2d 348. The trial court "must have discretion to do what is equitable upon the facts and circumstances of each case." *Cherry,* at 355.

"In allocating property between the parties to a divorce and in making an award of sustenance alimony, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." *Kaechele, supra,* at 97.

In reviewing the trial court's decision, this court is convinced that the trial court has properly determined that an equal division of the property was appropriate in this instance. Further, this court chooses to consider the $34,610 the appellant-husband was ordered to pay appellee-wife for the "net adjustment to balance" as a lump sum alimony award. Therefore, this court concludes that there was competent, credible evidence supporting the trial court's valuation of the appellant 's business and the $34,610 award. Accordingly, the first and third assignments are without merit.

In his second assignment of error, appellant contended that there was an insufficient foundation to qualify appellee's witness, as an expert and to allow him to express an opinion of the fair market value of the corporation. Appellant also appeared to be arguing that his expert's testimony should be granted more weight because his expert was the corporation's regular accountant. As discussed in the first assignment, appellant failed to object to the qualification of appellee's witness as an expert, and even if he had, his qualifications were clearly adequate in this circumstance.

The record demonstrated that the appellee's witness testified that he was furnished with "statements which appeared to be internally prepared or prepared by an accountant, essentially a profit and loss statement, and profit and loss statements for a variety of month-end periods, year-end periods, along with the balance sheet." He further testified that on the basis of this information, he analyzed the "important issues." He also testified as to the various methods used to evaluate a business and the method he used in evaluating this business. Contrary to appellant's assertions, the witness testified to his opinion of the fair market value of the corporation, *i.e.,* $331,500 to $376,000. Thus, there was a proper foundation for his expert opinion and this portion of the assignment is not well taken.

For some unfathomable reason, appellant also argues in the same assignment that the trial court erred by failing to deduct from its valuation, the following debts:

the loans guaranteed by the appellant; the personal debt assumed by the appellant; and the $53,000 debts owed by appellant to the corporation. As indicated in the first assignment, we are unable to locate either in the transcript or the exhibits any debt which has been "assumed" by the appellant on behalf of the corporation. We can only surmise that appellant in this assignment is referring to the $128,000 worth of corporate debt on which the appellant is also personally liable. We are at a loss to see any abuse of discretion, absent evidence to the contrary, in treating it any other way than the trial court did; to-wit: deduct it from the value of the corporation. As to the $53,000 worth of debt that appellant owes to the corporation, the testimony clearly shows that the bulk of that debt was for family and personal expenses of the appellant. We are puzzled as to how such a debt, which is legitimately owed to the corporation, would decrease rather than increase the corporation value. Regardless of what method of book juggling the tax accountant engages in, the $53,000 is still a viable collectable debt of the corporation. Hence, it is an asset of the corporation. Further, the appellee's accountant indicated, based on his use of the capitalization of the estimated cash flow as his theory of valuation, that debts owed to and from the corporation would be irrelevant in that valuation method. As to the appellant's query as to how the trial court could assume the continuing viability of the corporation, we note that there is nothing of evidence to indicate that the imminent demise of the corporation is in view. If we were to follow that trend in thought, any asset which could not immediately be liquidated would have to be disregarded as too speculative in value to be accountable. We fail to see the abuse of discretion complained of by the appellant in this assignment.

In his fourth assignment of error, appellant argues that the trial court's award of maintenance and sustenance alimony was against the manifest weight of the evidence.

R.C. 3105.18(B) provides the factors which a court must consider in determining the nature, amount and manner of payment of alimony. A trial court has broad discretion in determining whether an award of sustenance alimony is appropriate. *Teeter v. Teeter* (1985), 18 Ohio St. 3d 76; *Wolfe v. Wolfe* (1976), 46 Ohio St. 2d 399 and *Berish v. Berish* (1982), 69 Ohio St. 2d 318. Even though the court's discretion is broad, it is not unlimited, rather, the court 's award must be equitable. A reviewing court will not substitute its judgment for that of the trier of fact unless it finds that the court has abused its discretion. See, *Holcomb v. Holcomb* (1989), 44 Ohio St. 3d 128.

In *Blakemore v. Blakemore* (1983), 5 Ohio St. 3d 217, 218-219, the court held that "(t)he trial court's judgment cannot be disturbed on appeal absent a showing that the trial court abused its discretion *** '(t)he term 'abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, 'arbitrary or unconscionable.'"

Sustenance alimony is based on need and the court's award must be reasonable and equitable to both parties. See, *Kaechele, supra,* at 95.

In this case, the court's sustenance alimony award to appellee is confusing at first glance. It reads as follows:

"The Wife is entitled to sustenance alimony of $2,100.00 per month until further Order of Court, calculated as follows:

Wife's expenses per month .......$2,750.00
Less Wife's income per month ..... -416.00
——————
$2,334.00"

Appellee was, in fact, awarded the $2,334 until her remarriage or death of either party even though the court had initially stated that she was entitled to $2,100 (this appears to be a typographical error.) Since the trial court did not use the $2,100 figure in its calculation, this is not prejudicial. The combined amount of her income and alimony comes to $33,000 per year.

The record shows that appellee, who is 48, has an elementary education degree, but is not certified to teach in Ohio. Appellant asserts that appellee has not sought certification or inquired about the requirements for certification. However, appellee testified that she believed she was not marketable because of her age. Appellee substitute teaches on a part-time basis and grosses approximately $4,000 to $4,500 a year. Appellee has no expectancy of inheritance, and no medical insurance of her own. At the time of trial, she had emotional difficulties from which she was expected to recover.

The court found that appellant, age 56, earned a gross income of $90,000 per year from the corporation. Appellant testified that he earned approximately $73,000 from the corporation in 1988. His accountant, Mr. Halliday,

testified that appellant actually earned about $80,000, (which included a $6,000 or $10,000 bonus.) In 1987, appellant earned $97,956. Thus, it appears the court came to the $90,000 figure by averaging the last two years.

In its final entry of April 19, 1989 entry, the court found that appellee's monthly expenses were $2,750 per month. In appellee's earlier original motion for alimony *pendente lite,* appellee stated in an affidavit, that her monthly expenses were $3,386.26. At the final hearing, appellee testified that her expenses were basically the same as those she had listed in her affidavit which accompanied her earlier motion for temporary alimony. The trial court not only reduced that amount but also ordered her to assume her car payment. Appellant asserted that it was error for the court to consider this affidavit because it was not admitted into evidence; however, it was already part of the record. Therefore, there was no error in coming to the $2,750 monthly expense figure, and if there were, it did not prejudice appellant.

Appellant next argued that there was no obligation to maintain a "present lifestyle." In *Kaechele, supra,* at 95, the court held that the "standard of living achieved by the parties during marriage is often altered upon termination." However, in the instant case, the trial court indicated that the parties can clearly afford the lifestyles they have been maintaining since their separation. There is no indication that their present lifestyles are on a par with their previous marital lifestyle. The wife's original monthly expenses of $3,386.26, were reduced to $2,750. Further, she was now responsible for her car loan. Appellant's income minus the alimony payment is $90,000 minus $28,008 or $61,992. Under the circumstances, the award is not an abuse of discretion. We find this issue of the assignment to be without merit.

Notwithstanding the above affirmance of the amount of sustenance alimony, its open ended aspect must be addressed. The Ohio Supreme Court recently held:

" *** that *except* in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, and award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities." *Kunkle v. Kunkle* (1990), 51 Ohio St. 3d 65, 69. (Emphasis added.)

Under the present circumstances, an open ended award is not necessarily inequitable as it tentatively fits the exception. The parties were married for twenty-eight years; the wife was 48 years old; she worked part-time as a substitute teacher and apparently does not have much potential for any kind of retirement income.

On the other hand, the appellant has the proven ability to generate an adequate income for both himself and appellee. This includes the continued funding of a retirement plan for himself.

Still, the evidence is less than convincing that appellee would never be able to earn more than $5,000 per year.

Because the evidence is not definitive on this point, the court should provide some incentive to encourage the now reliant party to become financially independent. Such incentives could include "two for one" earning provisions; "front-loaded alimony" (to provide for tuition or retraining); periodic reviews to evaluate the efforts and progress of the dependent spouse; and/or other positive "carrots." Likewise, it should be possible for the trial court to recognize and acknowledge despite such incentives that not all displaced homemakers are wonder women capable of becoming financially independent within a few years or ever of their displacement from the home. *Kunkle* acknowledges that possibility.

We realize that all of these options put a burden on the court system. Nevertheless, the alternative of ignoring or glossing over the economic realities facing a displaced homemaker is too costly to contemplate, both to the parties and to society.

We are convinced that the Supreme Court in *Kunkle* could not have possibly meant to leave a dependent homemaker in a substandard financial position in an instance when the wage earner spouse can apparently maintain a financially secure lifestyle for both parties *and* it is uncertain if the homemaker is realistically *able* to provide comparably for herself.

This case provides such a situation. In light of the parties' present disparate earning capacities and appellee's dim retirement prospects, there is no inequity in awarding a potentially open ended alimony under these particular circumstances. Therefore, we modify the judgment of the trial court to retain jurisdiction to provide for a review of the alimony provision

every five years to ascertain its continuing validity as well as to evaluate the efforts and ability of the wife to increasingly provide for herself. The five years shall run from the date of this order. This modification shall not effect or eliminate the right of either party to petition for modification due to change of circumstance. Accordingly, appellant's fourth assignment is affirmed as modified.

The judgment of the trial court is modified and affirmed as modified.

FORD, J., concurs.
LYNCH, J., Ret. sitting by assignment.

LYNCH, J., dissenting.

This judge concurs with the majority opinion for appellant's second assignment of error, but dissents in part for appellant's first, third and fourth assignments of error.

This judge's main dissent concerns the application by the trial court of the evaluation of Robert Carter & Associates, a corporation of which appellant owns one hundred percent of the stock-and is sole director. The business of such corporation is a market consultant service.

Appellee 's expert used the capitalization of appellant's income or salary from subject corporation to determine the fair market value of such corporation between $331,500 and $376,000 based upon a rule of thumb capitalizing appellant's salary of $80,000 from such corporation at three to five times such income.

Appellant's expert testified that the key factor in determining the value of such corporation would be the continuity of appellant's presence in such corporation and that the value of the business without appellant would be zero. This testimony was unrebutted.

On the basis of the testimony of appellant's expert, the trial court held that the net worth of such corporation was $250,000, which was awarded to appellant. The appellee was awarded the marital residence which was valued at $107,000, all the marital IRA's, checking, savings and certificate of deposit accounts and a judgment against appellant for $34,610 for the balance of the $250,000.

The trial court awarded appellee sustenance alimony of $2,334 a month, which is $28,000 a year on the basis of gross income of appellant of $90,000 per year.

The trial court based its decision on maintaining the present lifestyles of both parties. Its decision adequately provided that appellant could continue her present lifestyle. She has the marital home for a residence, plus all the cash assets and a sustenance alimony amounting to $28,000 a year.

However, the decision of the trial court left appellant without a residence and without any liquid assets to purchase a residence. In order for appellant to acquire a similar residence to the marital residence that was awarded to appellee and which was valued at $107,000, appellant would probably have to borrow money and would have to pay interest on such mortgage. Thus, it would cost appellant a considerable amount of money more than $107,000 to acquire a residence similar to the marital residence.

As to the $28,000 a year the appellant was ordered to pay appellee as sustenance alimony, appellant has to pay income tax based on this $28,000 so that it will cost appellant considerably more than $28,000 a year in order to comply with the trial court's order on sustenance alimony.

The trial court held that the subject corporation was a marital asset and awarded the subject corporation to appellant. However, the trial court, in effect, awarded $28,000 a year of the income of such corporation to appellee as sustenance alimony. Since appellee's expert evaluated the subject corporation by capitalization of appellant's income from such corporation, this judge would hold that the capitalization of appellant's interest in such corporation should be based on his average annual salary which appellee's expert set at $80,000 a year minus the $28,000 that the trial court awarded to appellee as sustenance alimony. Since $28,000 is thirty-five percent of $250,000, this judge would hold that the value of appellant's share of the income of the subject corporation is sixty-five percent of $250,000, which is $162,500. This would reduce the value of appellant's assets awarded to him by the trial court by the sum of $87,500. Therefore, instead of appellant owing appellee the sum of $34,610, as provided by the judgment of the trial court, the appellee, in the opinion of this judge, received $53,500 more of the marital assets than were received by appellant.

For the foregoing reasons, this judge would hold that the trial court's judgment on the division of marital assets, and particularly its judgment that appellant pay appellee the sum of $34,610 plus ten percent interest per year from the date of judgment, is so inequitable and

unfair to appellant under the facts of this case as to be an abuse of discretion on the part of the trial judge. Therefore, this judge would hold that appellant's first and third assignments have merit.

As to appellant's fourth assignment of error, appellee, who is forty-eight years old, has an elementary education degree, but is not certified to teach in Ohio because she lacks at least two mathematics courses. Appellee testified that she had not taken such courses because she believed that she was not marketable because of her age. The trial court found that appellee's health is generally good.

This judge would hold that appellee's reason for not taking such mathematics courses is not a valid reason and that, under the facts of this case, appellee should be ordered to take the courses required to obtain her teaching certificate and to make an effort to obtain full-time employment as a teacher.

This judge concurs in the majority opinion that the trial court should retain jurisdiction to provide for a review of the alimony provision every five years.