Plaintiff-appellant, James McMaken, appeals a judgment of the Butler County Court of Common Pleas, Domestic Relations Division, granting appellant a divorce from his wife, defendant-appellee, Theresa McMaken, upon grounds that the parties had lived separate and apart for more than one year. Appellant contends that the trial court erred in determining the duration of the marriage, awarding alimony to appellee and assigning a 1992 tax debt to appellant. Finding appellant's contentions without merit, we affirm.
Appellant and appellee were married on July 2, 1971 and have two emancipated children.[1] Throughout the marriage, appellant was the sole financial support while appellee was primarily a homemaker. Appellant operated a family-owned grocery store and car wash which he sold to a brother in 1987. In July of 1990, as a result of difficulties with one of their sons, appellant urged appellee to take the son and join her family in Texas, promising to join her there later. Appellant never joined appellee and she remained in Texas until March of 1993 when she filed for divorce in Montgomery County, Ohio.[2]
From July 1990 through March 1993, appellant paid appellee periodic payments totaling approximately $68,000 from funds derived from the sale of the family business. During this same period, appellee completed a bartending course, but testified that due to certain medical limitations, she has yet to use these skills to contribute to her own support. Since 1993, appellee has attempted to work in sales, and later as a loan officer, but has not met with success. Appellant is selling homes for The Cristo Group in Middletown, Ohio. His gross income in 1995 was $33,000, and $44,750 in 1996.
Pursuant to the divorce petition filed in 1993, the Montgomery County Domestic Relations Court outlined a division of marital property. Appellee received approximately $250,000 worth of assets, not including the $68,000 she received from appellant during her domicile in Texas, while appellant received approximately $315,000 worth of assets. In 1996, after the Montgomery County decree of divorce was vacated on appeal for want of jurisdiction, appellant refiled for divorce in Butler County, Ohio. The parties agreed to the same division of property as outlined in the Montgomery County decree and the only issue before the Butler County Domestic Relations Court was spousal support.
After listening to the evidence presented at the final hearing on March 26, 1997, the trial court issued a written "Decision" on April 29, 1997. The decision provided that the marriage was "of twenty years duration before the parties separated," and "that the separation was not absolute in 1990 but that the parties visited back and forth and resumed a marital-like relationship until some time thereafter."
The trial court found that the $68,000 in payments to appellee "were made while the parties remained in a marital relationship * * *." The trial court therefore determined that the term of the marriage was from 1971 until 1993, "when the first decree of divorce was rendered by the Montgomery County Court." The trial court further found "significant disparity between the earning abilities of the parties," and ordered appellant to pay appellee $1,000 per month as spousal support for a period of five years. The trial court formalized its "decision" in a final judgment entry issued on July 18, 1997.
Also at the final hearing, it was brought to the attention of the trial court that the parties' 1992 income taxes had yet to be filed. At the conclusion of the hearing, the trial judge requested that 1992 income tax information be submitted to the court. The 1992 income tax returns were subsequently filed with the court and they indicated that the parties faced a joint tax liability of $481.05 in federal taxes and $201.38 in state taxes. However, disposition of this marital liability was not addressed by the trial court in its final judgment entry.
On August 11, 1997, appellant appealed the trial court's judgment entry. Due to the fact the income tax liability issue was not settled, this court temporarily remanded the case to the trial court. Appellant then filed a Notice of Tax Liability indicating that the debt was in excess of $32,000. At that point, this court dismissed the appeal for lack of a final appealable order. On July 6, 1998, the trial court found appellant liable for the entire 1992 tax liability. Appellant sought to reinstate the original appeal, but we denied the motion. Appellant filed a new notice of appeal and assigns three assignments of error for our review. In his first assignment of error appellant contends:
 THE TRIAL COURT ERRED IN DETERMINING THE DURATION OF THE MARRIAGE.
Specifically, appellant contends that the trial court abused its discretion when it determined that the parties' marriage terminated in 1993, upon the filing of the divorce decree in Montgomery County, rather than a de facto termination date of July 1990 when appellee moved from Ohio to Texas with her son.
When determining the duration of a marriage, Ohio courts look to R.C. 3105.171 which provides:
 (2) "During the marriage" means whichever of the following is applicable:
 (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable * * *.
Thus, Ohio courts are vested with broad discretion to determine the termination date of a marriage. A reviewing court may not disturb such a determination unless there has been a showing that the trial court abused its discretion. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. "The term abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id. at 219 (citations omitted).
When determining the duration of a marriage, the Supreme Court of Ohio has held that equity may require a court to recognize a de facto termination date for the marriage. Berishv. Berish (1982), 69 Ohio St.2d 318, 320. In Berish, the supreme court expressly refused to promulgate any unworkable rules, but stated that such a decision was often guided by "pragmatic considerations," as "the precise date upon which any marriage irretrievably breaks down is extremely difficult to determine * * *." Id. at 319-320. Additionally, some Ohio appellate courts have held that should there be a de facto termination of a marriage, the decision "must be clear and bilateral, not unilateral" on behalf of the parties involved.Day v. Day (1988), 40 Ohio App.3d 155, 158.
Applying the foregoing standards to the facts of the casesub judice, we find that the trial court did not abuse its discretion when it determined that the parties' marriage terminated in 1993, rather than a de facto termination date of July 1990. There were several pieces of evidence that support the trial court's determination that the parties' marriage did not terminate in 1990. First, there is evidence that appellant urged appellee to move to Texas in 1990 and that during that period of time there was simultaneous discussion of him eventually joining her in Texas at a later date. Second, at the final hearing on March 26, 1997 the trial court heard testimony from both parties that during this period of separation, the parties continued to visit back and forth. It was therefore reasonable for the trial court to infer that the parties had "resumed a marital-like relationship." Finally, neither party put any evidence before the trial court indicating that the decision to separate in 1990 was a clear and bilateral decision on behalf of both parties to terminate their marriage. Given the foregoing, we find that the trial court's determination that the parties' marriage terminated in 1993, rather than July of 1990, was not an abuse of discretion. Accordingly, appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends:
 THE TRIAL COURT ERRED IN AWARDING SPOUSAL SUPPORT TO APPELLEE THERESA MCMAKEN.
Under this assignment of error, appellant presents two arguments. First, he argues that the trial court erred in failing to impute income to appellee, and second, he argues that the trial court erred in failing to credit appellant for the $68,000 he paid appellee from 1990 through 1993.
When making an award of spousal support, R.C. 3105.18(C) requires a trial court to consider a number of factors. While R.C. 3105.18(C) does not require a court to make specific findings of fact regarding each and every one of these factors, the judgment entry reveals that in this case, the trial court did indeed address every applicable factor. Notwithstanding this, appellant urges to this court to find that the trial court erred in awarding spousal support because it failed to impute income to appellee. We are unpersuaded by appellant's argument.
The decision to impute income rests within the trial court's sound discretion. Petrusch v. Petrusch (Mar. 7, 1997), Montgomery App. No. 15960, unreported, at 10. A review of the factors contained in R.C. 3105.18(C) reveals no requirement obligating a trial court to impute income to a party. Rather, when contemplating a spousal support award, R.C. 3105.18(C) requires that a trial court consider, among other things, the income of the parties and the relative earning abilities of the parties. Id. at 9. As noted above, the trial court did consider these factors. Specifically, the trial court found "significant disparity" between the earning abilities of the parties. The trial court also noted that appellee had been a full-time homemaker, who worked sporadically and currently had no income. The evidence in the record does not suggest that appellee is, or has the potential to become, self-supporting. Accordingly, we cannot say that the trial court's failure to impute income to appellee was an abuse of discretion.
Appellant further urges this court to find that the trial court erred when it stated that appellant was not entitled to credit for the $68,000 he had paid to appellee as spousal support from 1990 through 1993. Again, we find appellant's argument unpersuasive. When the marital assets were initially divided in 1993, appellee received approximately $250,000 in assets, not including the $68,000 she had already been paid by appellant, while appellant received approximately $315,000 in assets. While there is no steadfast requirement that the division of marital property be equal, it appears that in the initial division of marital property, appellant was, in fact, credited for the $68,000 he had paid to appellee between 1990 and 1993. In light of the foregoing, we cannot say that the trial court's refusal to again credit appellant for the $68,000 he paid to appellee as spousal support was arbitrary, unreasonable or unconscionable. Accordingly, appellant's second assignment of error is overruled.
In his final assignment of error, appellant contends:
 THE TRIAL COURT ERRED IN ITS ASSIGNMENT OF THE 1992 INCOME TAX DEBT.
After remand, the trial court determined that appellant was responsible for the 1992 tax debt of $32,000. The trial court reasoned that appellant was responsible for the parties' marital finances and was in a better financial position to pay the debt. Therefore, the conclusion reached was that an equal distribution of this debt would not be equitable. The trial court was well aware of how this ruling would impact the equity of the overall property settlement and we perceive no abuse of its discretion. Thus, the third assignment of error is overruled.
Judgment affirmed.
KOEHLER and YOUNG, JJ., concur.
[1] The trial court stated in its judgment entry that the parties were married in 1970; however, upon review of the record, the evidence reveals that the parties were married in 1971.
[2] The parties were first granted a divorce in a Montgomery County, Ohio court in 1993, but the decree was vacated in 1994. See McMaken v. McMaken (1994), 96 Ohio App.3d 402. However, both appellant and appellee testified at the final hearing in 1993, and certain facts included in our opinion herein were adopted from the above-referenced decision.