OPINION
This is an accelerated calendar case submitted on the record and the briefs of the parties. Appellant, Arthur A. Mauser, appeals from the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, entered on March 2, 2000, which granted the parties a divorce. Appellant raises three assignments of error related to the division of property and spousal support. The following facts are relevant to a determination of this appeal.
Appellee, Judith A. Mauser met appellant in 1992. The parties dated for two years and were married in December of 1994. At the time of the marriage, appellee was forty-seven, and appellant was forty-two years old. Appellee had custody of one minor child, a son, and appellant had custody of a thirteen-year-old son and an eighteen-year-old daughter.
Appellee worked for the Orange City Schools in Pepper Pike, Ohio. At the time of the divorce in 1999, she was earning approximately seventy-four thousand dollars per year. Appellant held licenses to sell real estate, mutual funds, and life insurance. At the time of the marriage he was unemployed. Also, at the time of the marriage, he was either in, or about to go through, bankruptcy proceedings. Because appellee had some concerns about finances, the parties entered a prenuptial agreement wherein both waived any claim to spousal support in the event of a divorce. Three months into the marriage, appellant got a job. At the time of the divorce, appellant was earning approximately sixteen thousand dollars per year.
Prior to the trial court's judgment, there is no evidence in the record that appellant raised the issue of spousal support or requested spousal support, either orally or in writing, at any point in the proceedings. In appellant's answer and counterclaim, he requested the equitable division of the property, and "other equitable relief," but made no specific request for spousal support. Along with her complaint for divorce, appellee filed a copy of the parties' prenuptial agreement, which contained the parties' waiver of rights respecting spousal support. The validity of the prenuptial contract was not challenged in the proceedings. In the sixth paragraph of the trial court's orders, the trial court assigned responsibility for the marital debt of $17,750 to appellee, then stated she shall not have to pay spousal support.
While the parties were on their honeymoon in a foreign country, appellant took appellee to a jewelry store to show her some jewelry he wanted to purchase for her. Initially, upon seeing the cost of the jewelry, appellee hesitated. Appellant persisted in trying to convince her she should have some of the jewelry. Appellant convinced her she should have a ring, which cost $3,200, and also a bracelet, which cost $4,000. As part of the justification for the purchase, appellant told appellee the jewelry might appreciate in value as a collectible. The salesperson then explained that if the purchase was put on a credit card, that the jewelry could be taken through customs without having to pay a duty for it. As appellant did not have a credit card, the purchase was placed on appellee's credit cards with the understanding that appellant would make the appropriate payments upon returning home.
Subsequently, appellant was not always able to make the required payments and appellee ended up spending several hundred dollars from her income on the bills, rather than allow her credit card to become delinquent. At the hearing, appellee testified that appellant wanted to buy the jewelry for her, that he insisted that she have it, and that he bought it for her as a gift on their honeymoon. In contrast, appellant testified that the jewelry was purchased as an investment, which he expected would increase in value, not as a gift. In its judgment entry, the trial court found that the jewelry was gifted to appellee, and not marital property.
There is some dispute over the value of the marital residence at the time of the marriage. Prior to the marriage, the residence was owned by appellee. Because appellant and his children were going to move into the home, an addition was going to be constructed. This led to different valuations of the property. The trial court found that, at the time of the marriage, the home was worth $130,000, and that appellee had a mortgage of $80,000 on the property. Thus, according to the trial court, appellee had equity of $50,000 at the time of the marriage. In the prenuptial agreement, the parties listed the value of the home at $160,000. Appellee testified that at the time of the marriage she had already signed a loan for the new construction and her mortgage was $158,000. Appellant asserts in his brief on appeal that the house was valued at $193,000 at the time of the marriage. However, appellant's figure is derived from an estimate of what the home would be worth uponcompletion of the planned renovations, which were not even started at that time. In any case, it was clear from the evidence that appellee had substantial equity in the home at the time of the marriage.
Appellant claims he undertook several improvements to the home at his own expense. He claims he personally paid $5,500 for the installation of a driveway, $4,000 for "the front yard," and $1,200 for a storage barn. Thus, appellant claims to have personally invested $10,700 in the property.
At the time of the divorce, the fair market value of the home was determined to be $184,500. The mortgage was at $178,000. The trial court ordered the house to be sold and the net equity to be split evenly between the parties. From this judgment, appellant timely filed his notice of appeal, assigning the following errors:
 "1]. The Trial Court erred to the prejudice of the Appellant by determining that the "Passman Jewelry," valued at $8,000 was not a marital asset but a gift to the Appellee and her separate property, not subject to division.
 "2]. The Trial Court abused its discretion and erred to the prejudice of the Appellant by failing to award him his equity in the marital home.
 "3]. The Judgment of the Trial Court in failing to award him spousal support was against the Manifest weight of the evidence, was contrary to law, and was an abuse of discretion."
 In appellant's first assignment of error, he contends that the trial court erred in determining that certain jewelry was gifted to appellee and, thus, her separate property upon divorce. R.C. 3105.171(D) sets forth the general rule that separate property is not subject to division in a divorce proceeding.
R.C. 3105.171(A) provides, in relevant part:
 "(6)(a) `Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be of any of the following:
"* * *
 "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."
 The party seeking to have the property deemed separate and thus non-marital property bears the burden of proof on this issue. Barkley v. Barkley (1977), 119 Ohio App.3d 155, 168. "Clear and convincing evidence" has been defined as "that degree of proof which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." (Citations omitted.) Id. at 168-169.
In the present matter, at the trial court level, appellee bore the burden of proving by clear and convincing evidence that the jewelry was given to her as a gift by appellant. The trial court determined that the jewelry was gifted to appellee and, thus, separate property. In Glassv. Glass (Dec. 22, 2000), Lake App. No. 99-L-120, unreported, 2000 Ohio App. LEXIS 6103, this court stated:
 "[a]n inter vivos gift occurs when the donor executes `an immediate voluntary, gratuitous and irrevocable transfer of property' to the donee. Smith v. Shafer
(1993), 89 Ohio App.3d 181, 183. `The essential elements of an inter vivos gift are as follows: (1) the intent of the donor to make an immediate gift; (2) the delivery of the property to the donee; and (3) the acceptance of the gift by the donee after the donor has relinquished control of the property.' Frederick v. Frederick (Mar. 31, 2000), Portage App. No. 98-P-0071, unreported, at 7. Accordingly, if any of these elements are not satisfied, the gift as a whole fails. Frederick at 7." (Parallel citations omitted.) Glass at 19.
 Appellee testified as to the circumstances surrounding the purchase of the jewelry. She testified to receiving the property and acceptance of the property. The critical issue is the intent of appellant at that time. When considering the element of the intent of the alleged donor, the key time frame is the time when the transfer was made. She testified that he bought it for her as a gift to her on their honeymoon. In contrast, appellant testified that it was purchased as an investment. Because appellant testified to that effect at trial, he argues on appeal there was not clear and convincing evidence before the court that he waived his rights and interests in the property, and gave it to appellee as a gift.
The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts to determine. CassorlaBros. v. Midwest Fireworks Mfg. Co., Inc. (Dec. 8, 2000), Portage App. No. 99-P-0021, unreported, 2000 Ohio App. LEXIS 6296 at *8, citingHollenbeck v. McMahon (1875), 28 Ohio St. 1, paragraph one of the syllabus.
The credibility of appellant's testimony and, thus, the weight it might be given, was highly suspect. For example, appellant's answers in response to questions posed on the tax consequences of a real estate transaction, in which he alleged he made $100,000, were ridiculous. Also, on direct examination, he testified he sold the home he owned prior to the marriage for $110,000. On cross-examination, appellee's counsel produced the settlement statement which proved he sold the home for $59,000. It was demonstrated his net equity and, thus, profit from the sale, was approximately $7,000. Yet he had testified that from the proceeds of the sale of his home he had paid for the jewelry ($8,000), paid for the driveway ($5,500), paid for the lawn ($4,000), and paid for a storage shed ($1,200). We cannot fault the trial court for discounting any testimony provided by appellant with regard to his intent at the time the jewelry was purchased. In that light, the testimony given by appellee provided clear and convincing evidence that the jewelry was a gift and, thus, her separate property. Therefore, we conclude the trial court's judgment was not in error. Appellant's first assignment of error is without merit.
In appellant's second assignment of error, he contends the trial court abused its discretion by failing to award him "his equity in the marital home." Appellant argues he is entitled to the entire $10,700 he claims to have spent on improvements for the home while he lived there. A trial court has broad discretion in establishing the equitable division of marital property. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. A trial court's distribution of marital property will not be reversed absent a showing that the court abused its discretion. Berish v. Berish
(1982), 69 Ohio St.2d 318, 319. An abuse of discretion constitutes more than an error of law, the court's judgment must be arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In the trial court's estimate, appellee entered the marriage with $50,000 in home equity. She also made all the mortgage payments through the course of the marriage. Even assuming appellant invested the money he claimed, this investment represents but a fraction of appellee's investment in the home. All things considered, the trial court's awarding appellant fifty percent of the net equity in the home was generous. Appellant's second assignment of error is without merit.
In appellant's third assignment of error, he contends the trial court's failure to award him spousal support was contrary to law, against the manifest weight of the evidence, and an abuse of discretion. In appellant's answer and counterclaim, while he made a general claim for relief, he did not specifically request spousal support. Furthermore, there is no evidence in the record that he subsequently advanced such a claim. Prior to 1991, a general claim for relief was sufficient to empower a court to make an award of spousal support. See Julier v.Julier (1900), 62 Ohio St. 90; Carr v. Carr (1989), 46 Ohio App.3d 132. However, R.C. 3105.18(B) was amended. Addressing this amendment, the Ninth District Court of Appeals stated:
 "Prior to the amending of R.C. 3105.18(B) there was no requirement that spousal support be specifically requested in order for it to be awarded. * * * The new language of R.C. 3105.18(B) however, expressly requires that spousal support be requested before it is awarded. Finding nothing to the contrary, we must follow the plain language of the statute." (Citation omitted.) Vincent v. Vincent (Nov. 6, 1991), Summit App. No. 15016, unreported, 1991 Ohio App. LEXIS 5301, at 4, 5.
 Thus, as appellant made no such request, he has effectively waived the claim.
Additionally, appellant waived his right to spousal support in the prenuptial agreement. Prenuptial agreements are permissible contractual arrangements in Ohio. Gross v. Gross (1984), 11 Ohio St.3d 99, paragraph one of syllabus. The court further stated:
 "Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce." Id., paragraph two of syllabus.
 The issue of the validity of the prenuptial agreement was never raised. There was no basis for the trial court to make any determination on spousal support other than that set forth in the prenuptial agreement. Nor is there any basis for this court to disturb that judgment.
"An appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called to the attention of the trial court at a time when such error could have been avoided or corrected by the trial court." Czup v. Czup (Sept. 17, 1999), Ashtabula App. No. 98-A-0046, unreported, 1999 Ohio App. LEXIS 4324, at *13, citing Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207,210. Appellant's third assignment of error is without merit.
The judgment of the trial court is affirmed.
 ____________________________ JUDGE WILLIAM M. O'NEILL
FORD, J., GRENDELL, J., concur.