OPINION
Defendant-appellant, Timothy Errington, appeals from the judgment entry/decree of divorce of the Common Pleas Court, Domestic Relations Division, of Wyandot County, Ohio, issued on October 19, 2001.
The parties to this appeal, Christine and Timothy Errington, were married on October 3, 1987, and two children, Mitchell and Jordan, were born as issue of the marriage. Both children were minors at the time of divorce and are currently minors. On June 11, 1999, Mrs. Errington filed a complaint for divorce. A hearing on this matter was held on March 21-22, 2001, before the domestic magistrate. After both parties submitted proposed findings of fact and conclusions of law, the magistrate issued his decision on June 20, 2001.
Mr. Errington then filed objections to the magistrate's decision. The trial court overruled Mr. Errington's objections and adopted the magistrate's decision in its entirety on October 10, 2001. On October 19, 2001, the trial court issued its final decree of divorce. This appeal followed, and Mr. Errington now asserts four assignments of error with the trial court's judgment.
 THE TRIAL COURT REFUSED TO ALLOCATE PARENTAL RIGHTS AND RESPONSIBILITIES PURSUANT TO A SHARED PARENTING PLAN.
 THE TRIAL COURT ERRED IN ALLOCATING TO THE APPELLEE $8,405.00 WORTH OF JEWELRY AS BEING APPELLEE (sic) SEPARATE PROPERTY.
 THE TRIAL COURT ERRED IN FINDING NED GREGG TO BE QUALIFIED UNDER EVIDENCE RULE 702 AS AN EXPERT.
 THE TRIAL COURT ERRED IN FAILING TO TAKE IN TO (sic) CONSIDERATION THE DECREASE IN RETIREMENT OF THE APPELLANT.
 First Assignment of Error
Mr. Errington first contends that the trial court should have adopted a shared parenting plan rather than designating Mrs. Errington the sole residential parent and providing him with visitation rights only. On February 7, 2001, Mr. Errington filed a motion for the adoption of a shared parenting plan, whereby the children would spend one week with him, then the following week with their mother. The court then ordered Mrs. Errington to file a shared parenting plan, which she did, although she opposed shared parenting. Her plan provided that she would be the primary residential parent. The magistrate found that shared parenting was not in the best interest of the children, designated Mrs. Errington as the residential parent, and provided Mr. Errington with visitation rights. The magistrate's decision gave Mr. Errington visitation with his children every weekend with the exception of every third weekend, one mid-week visit from the time that they are out of school until 8:00 p.m., three non-consecutive weeks of visitation during the summer, and holiday visitation in accordance with Local Rule 25. This visitation schedule allotted Mr. Errington more visitation with his children than the normal visitation schedule established by Local Rule 25.[1]
Ohio law provides the following:
 If only one parent makes a request in the parent's pleadings or files a motion and also files a plan, the court in the best interest of the children may order the other parent to file a plan for shared parenting in accordance with division (G) of this section. The court shall review each plan filed to determine if any plan is in the best interest of the children. * * * If the court determines that no filed plan is in the best interest of the children, the court may order each parent to submit appropriate changes to the parent's plan or both of the filed plans to meet the court's objections or may select one filed plan and order each parent to submit appropriate changes to the selected plan to meet the court's objections.
R.C. 3109.04(D)(1)(a)(iii). However, R.C. 3109.04 further provides that "[t]he approval of a plan under division (D)(1)(a)(ii) or (iii) of this section is discretionary with the court. * * * If the court, under either division, does not determine that any filed plan * * * is in the best interest of the children, the court shall not approve any plan." R.C.3109.04(D)(1)(b). In determining whether shared parenting is in the best interest of the children, the trial court must consider the factors enumerated in R.C. 3109.04(F)(2). These factors include whether the parents are able to cooperate with one another regarding the children, whether the parents encourage the children to share "love, affection, and contact" with the other parent, the history of or potential for abuse, the "geographical proximity of the parents to each other," and the recommendation of the guardian ad litem, if any. R.C. 3109.04(F)(2)(a-e). The trial court's determination of what is in the best interest of the children will not be reversed absent an abuse of discretion by the trial court. Patton v. Patton (March 6, 2001), Marion App. No. 9-2000-84, unreported, 2001 WL 218435. The same is true for the trial court's designation of a residential and custodial parent. Noble v. Noble
(September 20, 2001), Logan App. No. 8-01-05, unreported, 2001 WL 1108751. However, an abuse of discretion is not simply an appellate court's disagreement with the decision of the lower court, but rather, connotes that the trial court's "attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219
(citations omitted).
Pursuant to those factors listed in R.C. 3109.04, the trial court determined that it was not in the best interest of the children to adopt a shared parenting plan and that it was in the best interest of the children to designate Mrs. Errington as residential parent. We find no abuse of discretion in this decision. The testimony revealed that Mrs. Errington was the primary caretaker for the children, that they had lived in her home (the marital residence) since they were born, and that Mr. Errington's work schedule fluctuated quite a bit of the time because of his position with the Ohio State Highway Patrol and his part ownership of a sporting goods store. The evidence also revealed that Mr. Errington was quite involved with his children when they were younger but that his time with them had waned since obtaining part ownership of his store. To the contrary, Mrs. Errington's work schedule provided specific, consistent hours, which enabled her to maximize her time with the children and to maintain stability for them. Although Mr. Errington testified that he would be willing to sell his ownership of the business and take a demotion to allow for a stable work schedule, he had not done so at the time of the hearing. In addition, although the parties live across the street from one another, the plan proposed by Mr. Errington would involve the children transferring from one home to another every week rather than maintaining one primary residence. Based upon the evidence before the court, we cannot find that the magistrate, and subsequently the trial court in adopting his decision, abused that discretion in determining that the shared parenting plan was not in the best interest of the children at that time, rejecting the plan, and designating Mrs. Errington the residential parent. Therefore, the first assignment of error is overruled.
 Second Assignment of Error
In his second assignment of error, Mr. Errington asserts that various pieces of jewelry, valued at $8,405.00, should have been deemed marital property rather than the separate property of Mrs. Errington. In granting a divorce, a trial court is required to "determine what constitutes the parties' marital property and what constitutes their separate property."Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159 (citing R.C. §3105.171(B)). Ohio law defines "marital property" in pertinent part as "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage[.]" R.C. 3105.171(A)(3)(a)(i). "Separate property" is also defined by Ohio law. This definition provides that personal property that "was acquired by one spouse prior to the date of the marriage" is considered separate property. R.C. 3105.171(A)(6)(a)(ii). In addition, separate property includes "[a]ny gift of any real or personal property * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii); see also Pudlo v. Pudlo
(June 29, 2001), Hancock App. No 5-2000-29, unreported, 2001 WL 730986.
In reviewing the record, there was unequivocal testimony that the jewelry Mr. Errington purchased and gave to Mrs. Errington was intended as a gift. First, some of the jewelry was given to Mrs. Errington prior to the marriage. Also, Mr. Errington admitted that much of the jewelry was purchased and/or given around various holidays and special occasions. Moreover, there was evidence that he gifted jewelry to his current girlfriend, which demonstrated that Mr. Errington gave gifts of jewelry as his way of showing affection. There was also testimony that nothing was said at the time of delivery about the pieces of jewelry given to Mrs. Errington were being given as conditional gifts.[2] We view all of the foregoing to be clear and convincing evidence that this jewelry was given as a gift as required by R.C. 3105.171(A)(6)(a)(vii). Based upon the record, we find the jewelry was properly awarded to Mrs. Errington as her separate property. Mr. Errington's second assignment of error is overruled.
 Third Assignment of Error
Mr. Errington next contends that the trial court erred in qualifying Ned Gregg as an expert witness. Ned Gregg, a licensed realtor, conducted an appraisal of the marital home in 1999. Mr. Gregg testified about his appraisal at the divorce hearing on behalf of Mrs. Errington. He valued the marital residence at $96,000.00. However, Mr. Errington had a second appraisal of the property performed in 2001, by Don Davis. Mr. Davis valued the property at $115,000.00. The magistrate chose to utilize Mr. Gregg's 1999 appraisal of $96,000.00 in determining the value of the marital residence for purposes of the divorce proceedings.
Initially, this Court notes that although this assignment of error purports to challenge Mr. Gregg's qualifications as an expert, the argument propounded in support of this assignment of error focuses primarily upon the notion that Mr. Davis' appraisal was "better" than that conducted by Mr. Gregg rather than disputing Mr. Gregg's qualifications. Despite this inconsistency, we will address both whether Mr. Gregg qualified as an expert and the magistrate's decision to utilize the appraisal of Mr. Gregg rather than Mr. Davis.
The trial court has the sound discretion to determine an expert's qualifications to testify on a particular subject. State v. Jones
(2000), 90 Ohio St.3d 403, 414 (citing State v. Awkal (1996),76 Ohio St.3d 324, 331). Accordingly, any decision concerning the admission or exclusion of expert testimony will not be disturbed absent an abuse of discretion. Jones, supra (citing State v. Bidinost (1994),71 Ohio St.3d 449, 453). Expert testimony must meet the criteria of the Rules of Evidence, which provide that a witness may testify as an expert if:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons * * *; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
Evid.R. 702; see also State v. Hartman (2001), 93 Ohio St.3d 274,283-284.
This Court finds that the first prong of the rule was satisfied, since expert testimony was necessary to determine the value of the marital residence. We also find that the second prong of the test was satisfied. The testimony given by Mr. Gregg revealed that he has been a real estate broker since 1971, he has completed enough courses to sit for the appraisal exam if he so chooses, he has attended various courses on appraisals, as well as seminars to stay updated in the appraisal field, and he performs 300-325 appraisals per year. In addition, he has sold a significant amount of real estate in Wyandot County. Therefore, Mr. Gregg's testimony demonstrated that he had specialized knowledge, skill, experience, training, and education in the appraisal of residential property. Moreover, we find that the second prong of Evid.R. 702 was satisfied since Mr. Errington never specifically challenged or objected to Mr. Gregg's expert qualifications at trial.[3] As for the third prong, Mr. Gregg had specialized information about real estate appraisals, and, in particular, he had sufficient information about the parties' marital residence by way of a visual inspection of both the interior and exterior of the home. Therefore, the record reflects that Mr. Gregg was qualified to give his opinion as to the value of the marital residence.
Having determined that Mr. Gregg was qualified as an expert pursuant to Evid.R. 702, we now turn to the issue of whether the trial court erred in utilizing his appraisal instead of Mr. Davis' appraisal. This Court begins its analysis of this issue by noting that "[t]he trial court enjoys broad discretion in determining the value of a marital asset * * * [but] this discretion is not limitless. Our task on appeal is * * * to determine whether, based on all the relevant facts and circumstances, the court abused its discretion in arriving at a value." James v. James
(1995), 101 Ohio App.3d 668, 681; see also Martin v. Martin (June 6, 1995), Allen App. No. 1-94-82, unreported, 1995 WL 347909 (citing Morov. Moro (1990), 68 Ohio App.3d 630, 637). The Ohio Supreme Court has further noted that "[e]quity may occasionally require valuation as of the date of the de facto termination of the marriage. The circumstances of a particular case may make a date prior to trial more equitable for the recognition, determination and valuation of relative equities in marital assets." Berish v. Berish (1982), 69 Ohio St.2d 318, 320. Thus, "[i]n order to do equity, a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or de facto termination of the marriage, where reasonable under the facts and circumstances presented in a particular case." Id. at 321.
In the case sub judice, the main difference between the skills of these two appraisers is that Mr. Davis is a certified appraiser, having passed the appraisal exam, and Mr. Gregg is not, having never taken the exam. As for their respective appraisals, Mr. Davis also searched for comparable sales, ultimately listing four comparable sales, while Mr. Gregg did not use comparables. In addition, Mr. Gregg conducted his appraisal in 1999, near the time of the parties' separation, while Mr. Davis' higher appraisal was conducted in 2001, near the time of the final hearing on this matter. However, in determining that the more accurate value of the property was reflected by the 1999 appraisal of Mr. Gregg, the magistrate noted that Mr. Gregg testified that at the time of his appraisal, the home and outside building needed some finish work. The magistrate also noted that Mrs. Errington testified that she completed and paid for several improvement projects, which were begun but not completed by Mr. Errington. Moreover, Mr. Davis testified that he was not aware of the condition of the property at the time of the parties' separation. Given the evidence before the court, we cannot find that the trial court abused its discretion in determining the value of the property at the time of the parties' separation. Accordingly, the third assignment of error is overruled.
 Fourth Assignment of Error
The fourth and final assignment of error involves the court's failure to consider the decrease in Mr. Errington's retirement fund between the time of the parties' separation to the hearing date. Mr. Errington testified that at the time of the parties' separation, his deferred compensation fund was valued at approximately $78,000.00. However, at the time of the final hearing, it was valued at approximately $61,000.00. The magistrate determined that using the 1999 valuation would be more equitable and appropriate because it was close to the parties' separation unlike the valuation that occurred two years after the parties separated. In addition, the magistrate found that valuing the fund at its 1999 amount was consistent with his decision to value the marital residence based upon its 1999 appraisal.
Once again, we note that the trial court has discretion in determining the value of a marital asset and in choosing the date of such valuation. See James, supra; Berish, supra. As such, we cannot find that the trial court abused its discretion in determining the value of the deferred compensation fund at the time of the parties' separation. Therefore, the fourth assignment of error is overruled.
For all of these reasons, the assignments of error are all overruled. It is the order of this Court that the judgment of the Common Pleas Court, Domestic Relations Division, of Wyandot County, Ohio, is affirmed.
Judgment affirmed.
BRYANT and HADLEY, JJ., concur.
[1] Local Rule 25 provides a non-residential parent with visitation every other weekend and only two weeks in the summer.
[2] Although Mr. Errington testified that he gave the jewelry to his wife "for [their] future", he did not tell Mrs. Errington that when he gave her the various pieces of jewelry over the course of their marriage.
[3] Counsel for Mr. Errington, in objecting to Mr. Gregg's qualifications as a market analyst, did make the following comment as to whether Mr. Gregg was qualified as an appraiser: "I don't believe he's qualified as a market analyst. He is qualified, perhaps, as an appraiser, although there's a question in my mind about that also." However, Mr. Errington initially consented to an appraisal by Mr. Gregg in 1999, without questioning his qualifications, and Mr. Errington did not object to the admission of Mr. Gregg's written appraisal, Plaintiff's Exhibit 4, during the trial.