OPINION
On June 10, 1967, appellant, V. Dianne Longfellow, and appellee, Richard P. Longfellow, were married. On October 22, 1996, appellant filed a complaint for divorce.
A final hearing before a magistrate commenced on November 18, 1997. By decision filed December 19, 1997, the magistrate recommended that the parties should be granted a divorce, the duration of the marriage should be considered from June 10, 1967 to December 29, 1995, the parties' property should be divided equally and appellant should receive $1,500 per month in spousal support until the age of sixty-two and then $1,000 per month thereafter.
Both parties filed objections to the magistrate's decision. By judgment entry filed September 30, 1998, the trial court overruled all the objections and approved and adopted the magistrate's decision.
Appellant filed an appeal on October 21, 1998. Appellee filed a cross-appeal on October 28, 1998. This matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ABUSED ITS DISCRETION IN SELECTING AND APPLYING A DE FACTO MARRIAGE TERMINATION DATE, RATHER THAN THE FINAL HEARING DATE, FOR PROPERTY DIVISION PURPOSES.
CROSS-ASSIGNMENT OF ERROR I
 THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING EXCESSIVE SPOUSAL SUPPORT, BOTH IN TERMS OF AMOUNT AND DURATION, TO APPELLANT V. DIANNE LONGFELLOW.
The assignments of error challenge the de facto termination date of the marriage and the amount of spousal support. Both issues are subject to the abuse of discretion standard of review.Berish v. Berish (1982), 69 Ohio St.2d 318; Martin v. Martin
(1985), 18 Ohio St.3d 292. In order to reverse a trial court's judgment under this standard, we must determine the trial court's judgment was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217.
 I
Appellant claims the trial court erred in setting the termination date of the marriage as December 26, 1995 as opposed to the date of the final hearing, November 18, 1997. We disagree.
The trial court set December 26, 1995 as the termination date, adopting Conclusion of Law No. 9 from the magistrate's December 19, 1997 decision as follows:
 9. In the instant case the undersigned finds that the de facto termination date of the parties' marriage was December 29, 1995. This date should be used for purposes of both determining the duration of the marriage and in the valuation of marital property. The undersigned reaches this conclusion in light of the above-referenced authority, and in light of the undersigned findings that the parties' marriage ended when the Plaintiff left the marital home and the marriage, after which time the parties maintained separate residences, maintained completely separate business activities, and utilized separate bank accounts. As of the date of trial the parties had been separated for almost two years. The Plaintiff testified that from the date she left the marital residence, she had no intention of continuing the marriage. Further, neither party attempted reconciliation after the separation. Therefore, the parties had completely separated themselves from each other as of December 29, 1995 in all aspects of their marriage and life, except the commonality regarding the parties' children. In light of these facts, equity demands that the marriage be deemed terminated as of December 29, 1995 for purposes of property division.
Needless to say, the termination date would not be an issue but for the appreciation of marital assets, pension benefits and additions to pension benefits during the two year period from separation to final hearing.[1]
In Berish, Justice William Brown discussed the broad discretion given to a trial court in determining termination dates as follows:
 The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations.
 Berish at 319.
 But the precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. It is the equitableness of the result reached that must stand the test of fairness on review.
 Id. at 320.
 `Marriage is a union of equals. Neither party should make a profit at the expense of the other. * * * This is why it is ill-advised and impossible for any court to set down a flat rule concerning property division upon divorce. A trial court must have discretion to do what is equitable upon the facts and circumstances of each case.'
 Id., quoting Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355.
 In order to do equity, a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or de facto termination of the marriage, where reasonable under the facts and circumstances presented in a particular case.
 Id. at 321.
Appellant argues the reasons cited by the trial court are not egregious enough to justify the choice of the earlier termination date. Appellant suggests there must be some misconduct in financial matters or a purposeful diminution in the value of the marital property to justify the choice of a de facto date. Such an argument flies in the face of the dicta in Berish. The Supreme Court of Ohio specifically held bright lines or hard and fast rules do not accomplish the equity required in the decision making process involving marital property.
We find the reasons adopted by the trial court were reasonable under the facts and circumstances presented. Although we can imagine scenarios where a spouse could purposefully delay a hearing to secure a financial coup or where parties might remain together in a "War of the Roses" situation to affect a termination date, neither was the case sub judice.
Upon review, we find the trial court did not err in setting the de facto termination date of the marriage as December 26, 1995.
Assignment of Error I is denied.
 Cross-Assignment of Error I
Appellee claims the trial court erred in determining spouse support and in not calculating into appellant's needs the amount generated by her marital assets. We disagree.
The trial court awarded appellant spousal support in the amount of $1,500 per month until she reaches age sixty-two and $1,000 per month thereafter. In adopting the magistrate's Recommendation No. 7, the trial court addressed appellee's arguments as follows:
 The parties are at opposite poles on the issue of post-decree spousal support. The Plaintiff requests spousal support in the amount of $3,000.00 per month until she reaches age 62 and $1,000.00 per month thereafter. The Defendant contends that the Plaintiff's unmet need is $1,400.00 per month after consideration of her income, and further, that at an 8% return per annum the amount of property awarded to Plaintiff herein would generate $1,400.00 in interest income per month, thereby obviating the need for spousal support. As noted above, the undersigned has found that the Plaintiff has a need for spousal support in the amount of $1,500.00 per month. The Plaintiff's request is for twice that amount and therefore totally unrealistic. The Defendant's no spousal support position is based solely on O.R.C. § 3105.18(C)(1)(a). That factor is one of fourteen set out in the statute. The Defendant's argument is also unrealistic. The property award made to the Plaintiff will be necessary for her to use in retirement. To utilize all the interest income from that award for monthly sustenance and support would deprive the Plaintiff of the growth of her property award to better provide for her retirement. One cannot presume that the Defendant would utilize monthly income from the property award which he receives herein for monthly support. To expect the Plaintiff to do so is unreasonable.
In determining spousal support, a trial court is guided byKunkle v. Kunkle (1990), 51 Ohio St.3d 64, paragraph one of the syllabus, and R.C. 3105.18(C)(1):
 Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony would provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
§ 3105.18 Award of spousal support; modification.
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3015.17.1] of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
As the evidence suggests, appellee is a shareholder in his own successful accounting business and makes in excess of $100,000 per year while appellant is fifty-two years old, unschooled except for one semester of college and earns $24,000 per year. During the thirty plus year marriage, appellant raised the parties' children, ran the household and helped appellee obtain his degree. T. at 38, 75-76.
Given these facts, we cannot say spousal support is unnecessary and the award sub judice was unreasonable. In addition, we concur with the trial court's decision to not consider the income from appellant's marital assets. As noted by Justice Brown in Berish at 320, marriage is a "shared enterprise" and "[a]ssets acquired by the joint efforts of the parties should be * * * eligible for distribution." Equity would not be reached in forcing one party to dissipate their portion of the marital fruits for general and minimal living expenses while the other party saves and reinvests their respective portion.
Cross-Assignment of Error I is denied.
The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed.
By Farmer, J., Wise, P.J. and Gwin, J. concur.
______________________________
______________________________
 ______________________________ JUDGES
SGF/jp 0304
JUDGMENT ENTRY
CASE NO. 1998AP10 0111
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio is affirmed.
______________________________
______________________________
 ______________________________ JUDGES
[1] Attached to appellant's appendix brief at Appendix C is a chart illustrating the differences in the valuation amounts.